COMMONWEALTH of Pennsylvania,
Appellee

v.

Moses DOZZO, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 12, 2010.
Filed March 16, 2010.

Karl Baker, Public Defender, Philadelphia, for appellant

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BOWES, GANTMAN, and KELLY, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Moses Dozzo, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his consolidated jury trial convictions at Criminal No. CP–51–CR–0001778–2008 for robbery,[1] conspiracy,[2] two (2) violations of the Uniform Firearms Act ("UFA"),[3] and possession of an instrument of crime;[4] Criminal No. CP–51–CR–0001781–2008 for robbery; Criminal No. CP–51–CR–0001782–2008 for robbery; Criminal No. CP–51–CR–0001852–2008 for conspiracy and two (2) counts of robbery; Criminal No. CP–51–CR–0004508–2008 for robbery; and Criminal No. CP–51–CR–0007748–2008 for robbery and two (2) violations of UFA.[5] We affirm.

¶ 2 The relevant facts and procedural history of this appeal are as follows. On June 22, 2007, around 9:40 p.m., Appellant and another male robbed Elizabeth Shane and Thomas Quinn at 6350 Greene Street, Philadelphia, one block from the Upsal train station. Appellant approached Ms. Shane and Mr. Quinn and threatened to "blow their f'ing heads off." Appellant stood behind Ms. Shane and instructed the other male to search Ms. Shane and Mr. Quinn, and specifically asked Ms. Shane where she kept her cellular phone. Appellant took Ms. Shane's purse which contained her wallet, cell phone, and other electronics, and Mr. Quinn's wallet, cell phone, and travel bag. Ms. Shane told the police the assailant had a Jamaican accent. Ms. Shane identified Appellant as her assailant in a photographic lineup, but was unable to identify Appellant at an in-person lineup.

¶ 3 On July 4, 2007, around 11:00 p.m., Appellant and another male robbed Sheila Heyer–Rivera and her cousin Melissa Velez at 6305 Greene Street, Philadelphia, approximately two (2) blocks from the Upsal and Tulpehocken train stations. Appellant pointed a silver handgun at Ms. Velez while the other male searched both women. Appellant took money and a cell phone from Ms. Heyer–Rivera. Ms. Heyer–Rivera stated her assailant had an African accent. Ms. Heyer–Rivera identified Appellant as the robber in a photographic lineup, but was unable to decide between two individuals, one of whom was Appellant, at an in-person lineup.

¶ 4 On July 11, 2007, around 8:50 p.m., two men accosted Charles Lanier in the pedestrian tunnel beneath the Wister train station in Philadelphia.[6] One man stood behind Mr. Lanier the entire time and held what Mr. Lanier believed was a gun to Mr. Lanier's head, while the other man searched Mr. Lanier and took Mr. Lanier's money and two cell phones. Mr. Lanier stated the robber had a Jamaican or Caribbean accent.

---

**1.** 18 Pa.C.S.A. § 3701(a)(1)(ii).

**2.** 18 Pa.C.S.A. § 903(a)(1)

**3.** 18 Pa.C.S.A. §§ 6106(a)(1), 6108.

**4.** 18 Pa.C.S.A. § 907.

**5.** The jury found Appellant not guilty of all charges at Criminal No. CP–51–CR–0001779–2008.

**6.** The Tulpehocken, Upsal, and Wister train stations are all located in the Germantown area of Philadelphia.

¶ 5 On July 18, 2007, around 9:50 a.m., Appellant robbed Matthew Levy and Shawn Towey, and attempted to rob Jonah Steven Roll at the Tulpehocken train station. Appellant approached Mr. Levy while Mr. Levy was alone on the train station platform. Appellant showed Mr. Levy a silver gun Appellant had tucked into his pants, and took Mr. Levy's money and cell phone. Ms. Towey entered the train station platform while Appellant was robbing Mr. Levy. Appellant approached Ms. Towey and demanded her money. Ms. Towey refused, and Appellant showed Ms. Towey his gun and again demanded her money. Ms. Towey gave Appellant her money. Appellant saw and demanded Ms. Towey's cell phone. Appellant fiddled with the phone for a minute then returned the phone to Ms. Towey. Appellant then approached Mr. Roll, who grabbed Appellant's gun arm. After wrestling for a few minutes, Appellant extracted himself. Appellant pointed his gun at Mr. Roll and threatened Mr. Roll while backing away. Appellant placed Mr. Levy's cell phone on the ground then jumped over a fence and ran into Fairmount Park. Both Mr. Levy and Ms. Towey said the robber had a Jamaican or African accent. Ms. Towey identified Appellant as the robber in a photographic array, and Mr. Levy identified Appellant as the robber in both a photographic array and an in-person lineup.

¶ 6 On August 17, 2007, around 8:50 p.m., Appellant robbed Michael Gagliana at the Tulpehocken train station. Appellant approached Mr. Gagliana with Appellant's hand under his shirt; Mr. Gagliana believed Appellant had a gun. Appellant demanded Mr. Gagliana give Appellant his wallet and cell phone. Appellant took the wallet, removed the cash, and returned the wallet to Mr. Gagliana. Appellant also took Mr. Gagliana's cell phone. Mr. Gagliana stated the robber had a Jamaican or African accent and identified Appellant as the robber in a photographic array and in-person lineup.

¶ 7 On August 20, 2007, around 6:20 a.m., Appellant robbed Norman Johnson at the Tulpehocken train station. Appellant approached Mr. Johnson and pointed to a bulge under Appellant's shirt. Mr. Johnson believed Appellant had a gun and gave Appellant his wallet. Appellant looked through the wallet, then returned the wallet to Mr. Johnson and walked away. Mr. Johnson called 911 on his cell phone; during the call Appellant returned and indicated Mr. Johnson should give Appellant the cell phone. Mr. Johnson continued talking to the 911 operator, and Appellant panicked and ran away. Mr. Johnson stated the robber had a Jamaican or African accent. Mr. Johnson did not identify Appellant in a photographic array, but did identify Appellant at an in-person lineup.

¶ 8 On March 3, 2008, Appellant was formally arraigned and charged with the seven robberies. The Commonwealth filed a pre-trial motion to consolidate the seven cases and on June 24, 2008, Appellant filed a motion to sever the cases. On July 11, 2008, the court granted the Commonwealth's motion to consolidate the cases and denied Appellant's motion to sever. From July 16 to July 18, 2008, the court held a jury trial. On July 18, 2008, the jury found Appellant guilty in six of the seven cases. On August 28, 2008, the court sentenced Appellant to a total of sixteen (16) to thirty-two (32) years of incarceration for the robbery and conspiracy convictions, followed by five (5) years of reporting probation for the UFA violations. On Monday, September 8, 2008, Appellant filed a post-sentence motion for reconsideration of sentence, which the court denied. On September 30, 2008, Appellant filed a notice of appeal. On December 18, 2008, the court ordered Appel-

lant to file a concise statement of matters complained of on appeal pursuant to Pa. R.A.P. 1925(b), which Appellant timely filed on January 7, 2009.

¶ 9 Appellant raises the following issue for our review:

> DID NOT THE [TRIAL] COURT ERR AND ABUSE ITS DISCRETION IN CONSOLIDATING SEVEN ROBBERY CASES FOR TRIAL, INSTEAD OF CONDUCTING TWO SEPARATE GROUPS OF TRIALS—ONE FOR ROBBERIES INVOLVING TWO ROBBERS AND THE OTHERS INVOLVING ONE—AS NO COMMON SCHEME OR ANY OTHER EXCEPTION UNDER Pa.R.E. 404(b) WAS ESTABLISHED AND THE EVIDENCE OF EACH CASE CONSTITUTED IMPERMISSIBLE, HIGHLY PREJUDICIAL PROPENSITY EVIDENCE?

(Appellant's Brief at 3).

¶ 10 Appellant argues the consolidation of the seven robbery cases allowed the Commonwealth to bolster its prosecution with highly prejudicial other crimes and propensity evidence. Appellant notes courts can admit evidence of other crimes under Pa.R.E. 404(b)(2) only where those crimes show a common scheme, plan or design, or the perpetrator's identity. Appellant contends the consolidated robbery charges should have been separated into two distinct and largely unrelated groups: robberies by a single individual during the day, and robberies by two individuals a night, where the individuals threatened the victims with a gun or violence. Appellant asserts these two groups of robberies are too distinct to show a common scheme or the identity of the perpetrator; consequently, the court should not have consolidated the cases under Pa.R.Crim.P. 582. Appellant maintains the consolidation of these two groups of cases was so prejudi-

cial it casts doubt on the reliability of the verdict. Appellant concludes this Court should vacate the judgment of sentence and remand for two separate trials. We disagree.

■ ¶ 11 Appellate review of the trial court's denial of a motion for severance is as follows:

> [A] motion for severance is addressed to the sound discretion of the trial court, and . . . its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether [the] appellant was prejudiced by the trial court's decision not to sever. [The a]ppellant bears the burden of establishing such prejudice.

*Commonwealth v. Melendez–Rodriguez*, 856 A.2d 1278, 1282 (Pa.Super.2004) (en banc) (internal citations and quotation marks omitted).

■ ¶ 12 The Pennsylvania Rules of Criminal Procedure govern the joinder and severance of offenses as follows:

### Rule 582. Joinder—Trial of Separate Indictments or Informations

(A) Standards

(1) Offenses charged in separate indictments or informations may be tried together if:

> (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

> (b) the offenses charged are based on the same act or transaction

Pa.R.Crim.P. 582(A)(1).

### Rule 583. Severance of Offenses or Defendants

The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any

party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim.P. 583. Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime. *Commonwealth v. Lauro,* 819 A.2d 100, 107 (Pa.Super.2003), *appeal denied,* 574 Pa. 752, 830 A.2d 975 (2003).

> The prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Id.* (quoting *Commonwealth v. Collins,* 550 Pa. 46, 55, 703 A.2d 418, 422 (1997), *cert. denied,* 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998)) (internal citations omitted).

¶ 13 Reading these rules together, our Supreme Court established the following test for severance matters:

> Where the defendant moves to sever offenses not based on the same act or transaction...the court must therefore determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Collins, supra* (quoting *Commonwealth v. Lark,* 518 Pa. 290, 302, 543 A.2d 491, 496–97 (1988)). Pursuant to this test, "a court

must first determine if the evidence of each of the offenses would be admissible in a separate trial for the other." *Collins, supra.*

■ ¶ 14 "Evidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime." *Id.;* Pa.R.E. 404(b)(1) (providing: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith"). Nevertheless:

> [E]vidence of other crimes is admissible to demonstrate (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the identity of the person charged with the commission of the crime on trial. Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts.

*Collins, supra* at 55, 703 A.2d at 422–23; Pa.R.E. 404(b)(2). *See also Melendez–Rodriguez, supra* at 1283 (reiterating "other crimes" evidence is admissible to show motive, intent, absence of mistake or accident, common scheme or plan, and identity). "Factors to be considered to establish similarity are the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed." *Commonwealth v. Taylor,* 448 Pa.Super. 238, 671 A.2d 235, 240 (1996), *appeal denied,* 546 Pa. 642, 683 A.2d 881 (1996). *See also Commonwealth v. Andrulewicz,* 911 A.2d 162, 169 (Pa.Super.2006), *appeal denied,* 592 Pa. 778, 926 A.2d 972 (2007) (upholding consolidation of three cases brought against defendant for sexual assault of

three minor females because cases demonstrated defendant's common scheme, and jury could separate evidence for each case). Additionally, "[w]here a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence." *Collins, supra* at 423.

■ ¶ 15 Instantly, there were numerous similarities among the seven robbery offenses for which Appellant was charged. The robberies all took place within a one-month period, at or near train stations in the same geographical area of Philadelphia. All of the robberies occurred during off-hours for the train stations: late in the evening or at night, or in the morning before or after rush hour. In each case, the perpetrator approached the victims and threatened them with a gun, by showing the gun or boasting he possessed a gun. In each incident, the robber took the victim's money, but, with one exception, not the victim's wallet. The robber showed particular interest in the victims' cell phones, specifically asking for the phones in several cases, and playing with the phones once he had them. Finally, all of the victims told the police their assailant had an African, Caribbean or Jamaican accent and at least one victim from six of the seven robberies identified Appellant as the perpetrator.

¶ 16 The evidence demonstrated all of the robberies were closely linked temporally and geographically, and showed the like manner in which Appellant committed the robberies. *See Taylor, supra.* Thus, the evidence showed Appellant's common scheme, plan or design. *See id.* Additionally, the evidence tended to establish Appellant's identity as the robber, through the many similarities between the robberies, the descriptions of the perpetrator's accent, and the victims' identifications of Appellant as the robber. *See id.* The fact that Appellant chose to enlist another individual to assist him in two of the robberies does not alter Appellant's participation or the fundamental similarities in the methods and goals of the robberies. Therefore, the evidence from the robberies committed with the assistance of a second individual would be admissible in a separate trial for the robberies Appellant conducted alone and *vice versa,* because the evidence established a common scheme, plan or design as well as Appellant's identity. *See Collins, supra;* Pa.R.E. 404(b)(2).

¶ 17 The record makes clear the jury was able to separate the evidence for each case. Each docket number dealt with the robbery of a different individual or set of individuals, each of whom testified about the details of his or her robbery. Further, when the court charged the jury, it instructed the jury to consider each case separately and included the cautionary instructions that the jury could not use the other crimes evidence as proof of Appellant's bad character. (N.T. Trial, 7/18/08, at 138–40). Lastly, the jury made separate findings for each charge under each docket number. Significantly, the jury found Appellant not guilty of all charges in one case, and not guilty of three out of four charges in a second case, demonstrating the jury considered each case and each charge separately and did not cumulate the evidence. The presentation of the evidence, the court's jury instructions, and the jury's verdict demonstrated the jury was able to and did separate the evidence for each case when it rendered its verdict. *See* Pa.R.Crim.P. 582; *Collins, supra.*

¶ 18 The admission of relevant evidence connecting Appellant to the crimes charged was the natural consequence of a criminal trial and alone was not grounds for severance. *See Lauro, supra.* Appellant committed a series of robberies at or

near local train stations, using a gun or the threat of a gun to intimidate his victims, and we see no undue prejudice in allowing the jury to hear evidence connecting Appellant to those robberies and tending to establish Appellant's identity as the perpetrator. *See id.;* Pa.R.Crim.P. 583. Consequently, we conclude the court did not abuse its discretion in consolidating the cases for trial and denying Appellant motion to sever on the ground asserted. Accordingly, we affirm the judgment of sentence.

¶ 19 Judgment of sentence affirmed.

**J.P., Appellee**