J. S64042/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GARY LYNN FISHER, | : | |
| | : | |
| Appellant | : | No. 600 MDA 2015 |

Appeal from the Judgment Nunc Pro Tunc August 23, 2011
In the Court of Common Pleas of Cumberland County
Criminal Division No(s).: CP-21-CR-0003127-2010
CP-21-CR-0003156-2010

BEFORE: FORD ELLIOTT, P.J.E., WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED DECEMBER 22, 2015**

Appellant, Gary Lynn Fisher, appeals *nunc pro tunc* from the judgment of sentence of six to twenty years' imprisonment entered in the Cumberland County Court of Common Pleas. Sentence was imposed after the jury found Appellant guilty of, *inter alia*, robbery—threatening serious bodily injury,[1] terroristic threats—causing terror,[2] possessing instruments of crime,[3] and theft by unlawful taking for three bank robberies.[4] Appellant claims (1)

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3701(a)(1)(ii).

[2] 18 Pa.C.S. § 2706(a)(3).

[3] 18 Pa.C.S. § 907(a).

[4] 18 Pa.C.S. § 3921(a).

evidence discovered at his apartment pursuant to a search warrant should have been suppressed, (2) the cases should have been severed, (3) the evidence was insufficient, (4) the evidence of a subsequent, fourth bank robbery was improperly admitted at trial, (5) the sentences for robbery, theft by unlawful taking, and terroristic threats in each should have merged, and (6) the trial court improperly instructed the jury on serious bodily injury, bodily injury, and robbery—threatening serious bodily injury. We affirm the convictions, but vacate the sentences for theft and terroristic threats.

The factual history of this appeal is as follows:

1. [Appellant] was charged with two robberies at a Metro Bank location in Lemoyne, Cumberland County, which occurred on July 15, 2010 and August 25, 2010, respectively, and one robbery at a Metro Bank in Camp Hill, Cumberland County on September 17, 2010.

2. Surveillance photos of the Camp Hill robbery depicted a white male wearing a bluish pullover jacket and baseball cap.

3. The perpetrator of the Camp Hill robbery handed a plastic bag and a note to the teller which stated "I have a gun, put money in bag."

4. The perpetrator of the August 25, 2010 robbery in Lemoyne passed a demand note which stated "I have a gun, put money in bag."

5. The demand note used in the July 15, 2010 bank robbery in Lemoyne stated "I have a gun, give me your bills."

6. On October 19, 2010, a robbery occurred at a Metro Bank in Lower Paxton Township, Dauphin County which is approximately ten miles from the three robberies in Cumberland County ["Cumberland County robberies"].

7. The demand note used by the perpetrator in the Dauphin County robbery stated, "I have a gun, give me your bills."

8. All of the aforesaid notes were written on lined paper.

9. [Appellant] was arrested following the robbery in Dauphin County after he entered a cab near the Metro Bank location.[5]

10. Using the various surveillance images from the September 17, 2010 robbery, Deputy Chief of Police Douglas Hockenberry [of the Camp Hill Police Department] after observing the perpetrator of the Dauphin County robbery, was able to identify that individual as the perpetrator of the Camp Hill robbery.

11. The search warrant obtained by Deputy Chief Hockenberry [on October 19th] sought items of clothing worn in the Cumberland County robberies and lined paper used for the respective demand notes.

12. Upon execution of the search warrant, Deputy Chief Hockenberry retrieved the following items from the [Appellant's] one-room apartment:

　　a. A green Top Flight notebook with lined paper.

　　b. A note stating "I have a gun, give me money" found in an envelope in a dresser drawer.

　　c. A note that was torn up and thrown in a plastic trash bag that when pieced together read "I have a gun, put money in the bag."

　　d. A pair of black Safe Trax size nine wide shoes.

---

[5] Appellant was charged separately for the Dauphin County robbery. We take notice that on September 11, 2012, one year after the imposition of sentence in the present case, he pleaded guilty to robbery and possessing instruments of crime for the Dauphin County bank robbery. *See* Docket CP-22-CR-0005541-2010, 11/23/15, at 14.

13. The envelope in which the demand note was found was unsealed and addressed to the Defendant, having been sent from the Pennsylvania Department of Labor and Industry.

Trial Ct. Op., 1/18/12, at 1-4.

The trial court also summarized the relevant evidence presented at the consolidated trial for the three Cumberland County robberies.

The police suspected that the same individual was involved in all three [Cumberland County robberies]. Their suspicions were based upon several factors. The perpetrator in each robbery was of the same general description. The manner of each robbery was virtually identical. A man wearing a baseball cap would approach the counter with his head down so that the video cameras could not get a clear view of his face. Without saying a word he would hand the teller a note stating he had a gun and demanding money. In each case the note was written on similar white lined paper.

The victims in all three robberies were terrified. The teller involved in the July 15, 2010 incident has required counseling and still has trouble sleeping. The one involved in the August 25, 2010 robbery was "very scared" and is still nervous at work. Finally the last teller described it as "perhaps the scariest moment in my entire life."

Photographs of the perpetrator taken from the surveillance videos were distributed to the media. The police investigated several leads without making any progress. Their big break occurred on October 19, 2010 when [Appellant] was arrested shortly after robbing the Metro Bank branch at the Colonial Park Mall in Dauphin County.

The [then-pending] Dauphin County robbery was strikingly similar to those in Cumberland County. A man of the same general description wearing a baseball cap approached the counter with his head down so that the video cameras could not get a clear view of his face.

> Without saying a word he handed the teller a note stating that he had a gun and demanding money. The note was written on the same type of white lined paper used in [some of the Cumberland County] robberies. [Appellant] was apprehended minutes after the robbery. He had in his possession the marked bills taken in that robbery.

Trial Ct. Op., 1/12/12, at 2-3. We note further that the teller from the first robbery identified Appellant from a photographic array arranged one day after his arrest in Dauphin County. All three tellers identified Appellant at trial. Lastly, the Camp Hill branch was approximately twenty blocks, or one mile from the Lemoyne branch.

On October 25, 2010, Appellant was charged with numerous counts of robbery and terroristic threats,[6] as well as theft by unlawful taking, and possessing instruments of crime for the demand note used in each robbery. The charges for the two Lemoyne incidents were listed in CR-3127-2010, and the charges for the Camp Hill incident were listed in CR-3156-2010. The Commonwealth filed a notice of joinder on February 8, 2011. Appellant filed an omnibus pretrial motion on July 21, 2011, seeking severance of the cases and suppression of the evidence from his apartment. The pretrial court denied the omnibus motion by order dated July 25, 2011.[7]

---

[6] As discussed below, Appellant was charged with terroristic threats—intent to terrorize another and recklessly causing terror under 18 Pa.C.S. § 2706(a)(1) and (3), respectively.

[7] The Honorable Albert H. Masland presided over the litigation of Appellant's pretrial motions. The Honorable Edward E. Guido presided at trial,

On July 26, 2011, Appellant proceeded to a jury trial. After jury selection, the Commonwealth orally moved to admit evidence of the Dauphin County robbery to establish common scheme and identity. N.T. Trial, 7/26-7/28/11, at 12. The trial court, over Appellant's objection, ruled the evidence was admissible. *Id.* at 15.

After the presentation of the evidence,[8] the trial court prepared eighteen verdict sheets. Two of the sheets mistakenly listed the location of the July 15, 2010, and August 25, 2010 robberies as "Camp Hill," rather than "Lemoyne." Additionally, a third verdict sheet did not include the date and location of the offense. Nevertheless, the jury questioned the three verdict sheets during its deliberations, and the trial court corrected the verdict sheets. N.T. Trial at 198. The jury also asked for definitions of serious bodily injury and bodily injury and whether it was necessary for Appellant to have a gun to find that he intentionally put the victim in fear of bodily injury. *Id.* at 195. The court issued supplemental instructions regarding serious bodily injury and bodily injury and instructed that the presence of a gun was not necessary to find an intent to put a victim in fear of serious bodily injury. *Id.*

_____

sentencing, and the post-conviction proceeding giving rise to this direct appeal.

[8] Appellant did not testify and did not present evidence.

On July 28, 2011, the jury found Appellant guilty of three counts each of robbery—threatening serious bodily injury, robbery—making demand of bank employee,[9] terroristic threats—causing terror, theft by unlawful taking, and possessing instruments of crime, as well as one count of robbery—threatening bodily injury.[10]  The trial court, on August 23, 2011, sentenced Appellant to an aggregate six to twenty years' imprisonment.  The total sentence included the following concurrent sentences: (1) six to twenty years on each count of robbery—threatening serious bodily injury, (2) sixteen months to seven years on each count of theft by unlawful taking, and (3) fourteen months to five years on each count of terroristic threats—causing terror.

A counseled notice of appeal was timey filed on September 21, 2011.  This Court affirmed the judgment of sentence on December 17, 2012, finding all appellate issues waived due to a defective appellant's brief.  ***Commonwealth v. Fisher***, 1664 MDA 2011 (Pa. Super. Dec. 17, 2012).

---

[9] 18 Pa.C.S. § 3701(a)(1)(vi),

[10] 18 Pa.C.S. § 3701(a)(1)(iv).  The trial court entered judgments of acquittal on the charges of terroristic threats—threatening crime of violence under 18 Pa.C.S. § 2706(a)(1).  The jury acquitted Appellant of two counts of robbery—taking property by force in CR-3127-2010. 18 Pa.C.S. § 3701(a)(1)(v).

Appellant did not seek allowance of appeal in the Pennsylvania Supreme Court, but filed a timely Post Conviction Relief Act ("PCRA")[11] petition on October 1, 2013. After the appointment of counsel, the PCRA court reinstated Appellant's direct appeal rights. Appellant filed a notice of appeal *nunc pro tunc* and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. The trial court incorporated two prior Pa.R.A.P. 1925(a) opinions and filed a new Rule 1925(a) opinion responding to the additional issues raised in the new Rule 1925(b) statement.

Appellant presents the following question for our review:

I. Whether the pretrial court erred in denying Appellant's omnibus pretrial motion to suppress[?]

II. Whether the pretrial court erred in denying Appellant's omnibus pretrial motion to sever[?]

III. Whether the evidence presented at trial at case CP-21-CR-3127-2010 was sufficient to convict Appellant of robbery under 18 Pa.C.S.A. § 3701(a)(1)(ii)[?]

IV. Whether the evidence presented at trial at case CP-21-CR-3156-2010 was sufficient to convict Appellant of robbery under 18 Pa.C.S.A. § 3701(a)(1)(ii)[?]

V. Whether the evidence presented at trial at case CP-21-CR-3127-2010 was sufficient to convict Appellant of terroristic threats[?]

VI. Whether the evidence presented at trial at case CP-21-CR-3156-2010 was sufficient to convict Appellant of terroristic threats[?]

---

[11] 42 Pa.C.S. §§ 9541-9546.

VII. Whether the evidence presented at trial at case CP-21-CR-3127-2010 was sufficient to convict Appellant of possession of instrument of crime[?]

VIII. Whether the evidence presented at trial at case CP-21-CR-3156-2010 was sufficient to convict Appellant of possession of instrument of crime[?]

IX. Whether the trial court erred when it permitted the Commonwealth to use evidence of a fourth robbery for which Appellant had not been convicted[?]

X. Whether the trial court erred when it failed to merge robbery, theft by unlawful taking and terroristic threats for purposes of sentencing at case CP-21-CR-3127-2010[?]

XI. Whether the trial court erred when it failed to merge robbery, theft by unlawful taking and terroristic threats for purposes of sentencing at case CP-21-CR-3156-2010[?]

XII. Whether the trial court erred in instructing the jury on the elements of serious bodily injury and bodily injury, and whether the presence of a gun need to be established, as answers to questions from the jury during deliberations[?]

Appellant's Brief at 9-10.

Appellant first claims he was entitled to suppression of the demand note found in his dresser in an unsealed envelope addressed to him. He asserts his involvement in the Dauphin County robbery did not establish probable cause to believe he perpetrated the Cumberland County robberies. *Id.* at 20. He emphasizes the following. He was wearing a green poncho after the Dauphin County robbery, but the suspect in two of the Cumberland County cases wore a fleece jacket. *Id.* The witnesses to the robberies did not positively identify him at the time the warrant was issued. *Id.* The witnesses gave general descriptions of the Cumberland County suspect. *Id.*

Appellant also asserts the warrant lacked sufficient particularity and the search of the envelope containing the demand note thus amounted to "rummaging" prohibited by the Fourth Amendment. *Id.* at 21. Appellant states, "Although paper would likely be found inside an envelope, there was no reason for the police to believe that the specific lined paper used in the bank robberies would be located inside an envelope addressed to Appellant from the state unemployment office." *Id.* No relief is due.

When reviewing the denial of a suppression motion,

> [a]n appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Caple*, 121 A.3d 511, 516-17 (Pa. Super. 2015) (citations omitted).

It is axiomatic that:

> [a] search warrant cannot be used as a general investigatory tool to uncover evidence of a crime. Nor may a warrant be so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize, which would result in the general "rummaging" banned by the Fourth Amendment.

*Commonwealth v. Rega*, 933 A.2d 997, 1011 (Pa. 2007) (citations omitted).

> "[A] warrant must describe the place to be searched and the items to be seized with specificity, and the warrant

must be supported by probable cause." "In order to obtain a valid search warrant, the affiant must establish probable cause to believe that execution of the warrant will lead to the recovery of contraband or evidence of a crime." We review the issuing authority's decision in light of the totality of the circumstances:

> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in [*Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)], the task of an issuing authority is simply to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a commonsense, non-technical manner.

*Caple*, 121 A.3d at 520 (citations omitted). Once a proper warrant is issued, "a lawful search generally extends to the entire area in which the object of the search may be found." *Rega*, 933 A.2d at 1013 (citation omitted).

In *Rega*, officers executing a search warrant "for papers and documents containing the names of prospective jurors" read two letters that were located in envelopes addressed to the defendant's mother. *Id.* at 1013-14. The letters did not relate to the initial search warrant, but suggested separate crimes. *Id.* at 1013. The officers obtained a second

- 11 -

warrant and seized the letters. *Id.* The *Rega* Court upheld the search, concluding the envelopes fell within the scope of the initial warrant and the officers properly scanned the letters to determine their relevance to the warrant. *Id.* at 1014.

Instantly, the affiant requested a search warrant for Appellant's apartment. He identified various clothes worn by the suspect in the Cumberland County robberies and "lined paper" as "items to be searched for and seized." App. for Search Warrant, 10/19/10, at 1. These requests were supported by the following averments. The three Cumberland County robberies involved a white male who passed notes to the teller on lined paper. *See* Aff. of Probable Cause, 10/19/10, at ¶¶ 2-3, 5. The notes demanded money and indicated the male had a gun. *Id.* Appellant was apprehended following the Dauphin County robbery and "match[ed] the physical description and modus operandi of the suspect in the [Cumberland County robberies.]" *Id.* at ¶ 8. The affiant reviewed surveillance video from the third robbery, determined the suspect wore the same jacket in the second and third robberies, and "positively identified" Appellant following his arrest in Dauphin County. *Id.*

In light of the foregoing, we agree with the pretrial court that the Commonwealth established probable cause that Appellant was involved in at least two of the Cumberland County robberies and evidence of those crimes, including clothes and "lined paper," could be found at his apartment. *See*

*Caple*, 121 A.3d at 520; Trial Ct. Op. 1/18/12, at 4. The search for clothing permitted officers to search the dresser, which led to the discovery of the envelope. Appellant concedes the envelope could have contained "lined paper." Appellant's Brief at 20. Thus, the officers' limited search of the envelope to determine whether its contents were relevant to a valid search warrant was proper. *See Rega*, 933 A.2d at 1013-14. Accordingly, no relief is due on Appellant's suppression claim.

Appellant next claims the trial court erred in refusing to sever the cases for trial. He argues the probative value of the proffered identification evidence of a common scheme was outweighed by its prejudicial effect. Appellant's Brief at 21-22. According to Appellant, the witnesses provided general descriptions of the suspect. *Id.* at 22. The similarities among the three Cumberland County robberies did not establish a unique *modus operandi*. *Id.* The robberies occurred at different times of day—the morning, afternoon, and evening—and spanned sixty-four days. *Id.* Although the first two robberies occurred at the same branch in Lemoyne, the third occurred in Camp Hill. *Id.* Appellant thus argues the evidence of each robbery was inadmissible as to the other robberies, was "highly prejudicial," and showed only a criminal propensity. *Id.* at 21-22 (citing *Commonwealth v. Dozzo*, 991 A.2d 898 (Pa. Super. 2010)). Additionally, he argues the jury was incapable of separating the offenses and consolidation resulted in actual confusion. *Id.* at 22. The trial court, he

notes, confused the dates and locations of three offenses on the verdict sheets. *Id.* at 21-22. Appellant's arguments are meritless.

This Court reviews the denial of a motion to sever for an abuse of discretion. *Dozzo*, 991 A.2d at 901 (Pa. Super. 2010). The decision on a motion to sever, in turn, is guided by the following precepts.

> Where the defendant moves to sever offenses not based on the same act or transaction . . . the court must . . . determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Id.* at 902; *see also* Pa.R.Crim.P. 582, 583.

In *Dozzo*, this Court concluded the defendant was not entitled to sever seven robberies between two trials. *Dozzo*, 991 A.2d at 900. The Court affirmed the trial court's determination the following allegations established a common scheme, plan, or design:

> The robberies all took place within a one-month period, at or near train stations in the same geographical area of Philadelphia. All of the robberies occurred during off-hours for the train stations: late in the evening or at night, or in the morning before or after rush hour. In each case, the perpetrator approached the victims and threatened them with a gun, by showing the gun or boasting he possessed a gun. In each incident, the robber took the victim's money, but, with one exception, not the victim's wallet. The robber showed particular interest in the victims' cell phones, specifically asking for the phones in several cases, and playing with the phones once he had them. Finally, all of the victims told the police their assailant had an African, Caribbean or Jamaican accent and at least one victim from

six of the seven robberies identified [the defendant] as the perpetrator.

***Id.*** at 903.

Additionally, the ***Dozzo*** Court concluded the possibility for confusion was minimal, where the incidents were charged under separate docket numbers, the Commonwealth's presented its evidence in a manner that did not cause confusion, and the jury was instructed and presented with verdict sheets clearly delineating the separate offenses. ***Id.*** The Court, when addressing the possibility of undue prejudice, reaffirmed the principle that "[t]he admission of relevant evidence connecting [a defendant] to the crimes charged [i]s the natural consequence of a criminal trial and alone [i]s not grounds for severance. ***Id.*** (citation omitted).

Appellant's instant attempt to distinguish ***Dozzo*** based on different details within the three robberies is unconvincing. Nothing in ***Dozzo*** requires that the location or time of the offenses be the same to establish a common scheme. ***See id.*** at 901, 903-04. Further, descriptions of the suspect need not be completely consistent or rendered with exacting detail. ***See id.*** at 903. Thus, we discern no basis to disturb the pretrial court's determination that the Commonwealth established a common scheme, which would have made the evidence of each robbery admissible at separate trials of the others.

As to Appellant's claim of confusion, the consolidated trial involved three, relatively straightforward incidents. The presentation of the evidence

was not confusing. *See Dozzo*, 991 A.2d at 903. The jury also had the benefit of still photographs from the video surveillance footage, which indicated the dates and times of the offenses. The fact that the jury prompted the corrections to the inaccurately captioned jury sheets further belied Appellant's suggestion of confusion. *See* N.T. Trial at 198. Lastly, we discern no merit to Appellant's suggestion that he was unduly prejudiced by the admission of propensity evidence, as the evidence of each robbery evinced a common scheme. *See Dozzo*, 991 A.2d at 903. The trial court cautioned the jury was obliged to render a verdict on each charge independently of its verdict on other charges. N.T. Trial at 174, 196, 199. Accordingly, Appellant's claim that the trial court erred in denying his motion to sever warrants no relief.

Appellant, in his third, fourth, fifth and sixth claims, argues the evidence was insufficient to convict him of robbery—threatening serious bodily injury and terroristic threats—causing terror. Appellant's Brief at 23, 25. He asserts he made no contact with the victims, no verbal threats, or physical gestures suggesting he was armed. *Id.* at 24-26. He thus contends the demand notes stating that he was armed and wanted money cannot support a finding that he threatened immediate serious bodily injury, *id.* at 25, or communicated threats to the tellers. *Id.* at 26. No relief is due.

It is well-settled that

[w]hen reviewing a claim challenging the sufficiency of the evidence, we apply the following standard:

[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jannett*, 58 A.3d 818, 819-20 (Pa. Super. 2012) (citation omitted).

The Crimes Code, in relevant part, states: "A person is guilty of robbery if, in the course of committing a theft, he . . . intentionally puts [another] in fear of immediate serious bodily injury." 18 Pa.C.S. § 3701(a)(1)(ii). "Serious bodily injury" means "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

- 17 -

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to . . . cause terror . . . with reckless disregard of the risk of causing such terror or inconvenience." 18 Pa.C.S. § 2706(a)(3). "[T]he term 'communicates' means conveys in person or by written . . . means." 18 Pa.C.S. § 2706(e).

In *Jannett*, the defendant committed three bank robberies over five days. *Jannett*, 58 A.3d at 819. In each robbery, the defendant entered a bank and wrote a note on a deposit slip that he handed to a bank teller. *Id.* The notes indicated he had a gun and the teller was not to activate an alarm or give him marked bills. *Id.* The defendant was found guilty at a bench trial and sentenced for three counts of robbery—threatening serious bodily injury. *Id.*

The *Jannett* Court determined, in relevant part, that the evidence was sufficient to sustain the defendant's convictions for robbery—threatening serious bodily injury. *Id.* at 821-22.

> The evidence is sufficient to convict a defendant of robbery under [18 Pa.C.S. § 3701(a)(1)(ii)] "if the evidence demonstrates aggressive actions that threatened the victim's safety." The court must focus "on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of immediate serious bodily injury." Additionally, this Court has held that the threat need not be verbal.
>
> At trial, the Commonwealth presented evidence that [the defendant] walked into three separate banks, handed the tellers notes demanding money and stating he had a gun, and that he received cash from each bank. The teller [the defendant] approached in the first bank testified that

he thought [the defendant] "might really have a gun" and he wanted to "get him out as soon as possible." He testified that he was afraid for his safety and for the safety of others in the bank and that he "didn't want to die that day of a shot." The teller at the second bank testified that she tried to give [the defendant] what he wanted "to get him out." She stated that when she saw [the defendant]'s note she was afraid [the defendant] would hurt her because he said he had a gun, and she worried about her "daughter not having" her. She also testified that during the robbery, she believed [the defendant] had a gun because of the threat contained in his note. The teller at the third bank [the defendant] robbed testified that [the defendant]'s actions scared her and she was afraid that [the defendant] "would shoot [her] or someone else in [her] branch."

Considering all the evidence presented, we find that the Commonwealth satisfied its burden of proving the elements of robbery under Section 3701(a)(1)(ii) beyond a reasonable doubt.

*Id.* at 821-22 (citations omitted).

The present record is similar to ***Jannett***. Appellant passed notes stating he had a gun and demanding money. ***See id.*** at 819, 822; see also Exs. C-4 (first note reading "I have a gun Give me your Bills!"), C-7 (second note reading "I have a gun Put money in bag"), C-18 (third note reading, "I have a gun Put money in Bag"). As noted by the trial court, all of the tellers testified Appellant's action caused fright and fear for theirs and others' safety. ***See*** N.T. Trial at 25-26, 43-44, 53-54. They complied with the demand because of the reference to the firearm and continued to suffer anxiety after the incidents. ***Id.*** In light of ***Jannett***, we discern no merit to Appellant's argument that the absence of verbal threats, physical contact, or

physical gestures undermined the validity of his convictions for robbery—threatening serious bodily injury.

As to terroristic threats—causing terror, Appellant argument's focuses on the element requiring that he communicate of the threat. The record, however, reveals Appellant presented bank tellers with notes demanding money and stating he had a gun. The written note satisfies the statute's definition of "communicates." **See** 18 Pa.C.S. § 2706(a), (e). Although the notes did not contain an express threat, an express or specific threat is not necessary to sustain a conviction for terroristic threats. **See** **Commonwealth v. Reynolds**, 835 A.2d 720, 730 (Pa. Super. 2003). Under the totality of the circumstances of this case, we agree with the trial court that a reasonable juror could find Appellant conveyed in writing an implied threat with reckless disregard for causing terror. **See** 18 Pa.C.S. § 2706(a)(3), (d). Thus, no relief is due.

Appellant's seventh and eighth claims challenge the sufficiency of the evidence for his convictions for possessing instruments of crime, which were based on the three demand notes used in the Cumberland County robberies. He relies on **Commonwealth v. Williams**, 808 A.2d 213, 215 (Pa. Super. 2002), to argue that a demand note merely facilitates a crime and is not an instrumentality of crime that the General Assembly intended to penalize. Appellant's Brief at 26-27. We disagree.

Section 907 of the Crimes Code provides: "A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). An instrument of crime means:

> (1) Anything specially made or specially adapted for criminal use.
>
> (2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

18 Pa.C.S. § 907(d).

In **Williams**, the defendant "stood on the street, spoke into the walkie-talkie, and directed various persons into a nearby house." **Williams**, 808 A.2d at 214. A confidential informant was directed to the same house by the defendant and purchased drugs at the house. **Id.** The defendant was arrested and convicted of a drug trafficking offense, as well as possessing instruments of crime for the walkie-talkie. **Id.**

On appeal, the **Williams** Court acknowledged our prior decision, in **Commonwealth v. Vida**, 715 A.2d 1180 (Pa. Super. 1998), that "a paint stick is an instrument of crime when wielded by a graffiti artist to commit criminal mischief." **Id.** at 215. The **Williams** Court distinguished **Vida**, reasoning that the paint stick was "itself the instrument whereby the criminal mischief (graffiti) was committed." **Id.** The walkie-talkie in the **Williams** case, however, "was used during the course of the drug sales . . . to help carry out the criminal offense." **Id.** The **Williams** Court held,

"[T]he mere use of an item to facilitate a crime does not transform the item into an instrument of crime for purposes of the PIC statute." *Id.* Thus, it vacated the defendant's possessing instruments of crime conviction.

In *Commonwealth v. Hill*, 406 A.2d 558 (Pa. Super. 1979), this Court held that a piece of burning cardboard thrown at a police officer was not an instrument of crime. *Hill*, 406 A.2d at 559. Of relevance, the *Hill* Court specifically discussed whether the cardboard "was '(a)nything specially made or specially adapted for criminal use.'" *Id.* The Court concluded no evidence showed the defendant reshaped or specially constructed the cardboard's form to commit a crime, which in *Hill* was to inflict bodily injury. *Id.*

Instantly, the evidence established that Appellant authored the three notes, thereby specially transforming the lined paper. *See id.* Unlike the walkie-talkie in *Williams*, the notes were the instruments by which Appellant committed the crimes, *i.e.* impliedly threatening violence and obtaining the money. *See Williams*, 808 A.2d at 215. Accordingly, Appellant has not shown that he is entitled to relief under *Williams*.

Appellant's ninth claim challenges the admission of evidence regarding the Dauphin County bank robbery. He argues the Dauphin County robbery was too remote in time and location to be relevant at trial for the Cumberland County robberies. Appellant's Brief 28. He argues the Dauphin

County robbery was too dissimilar to establish his identity in the Cumberland County robberies. *Id.* at 28-29. No relief is due.

The principles governing our review are as follows:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.
>
> \* \* \*
>
> While "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," Pa.R.E. 404(b)(1), "[e]vidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Pa.R.E. 404(b)(2). "Factors to be considered to establish similarity are the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed."

*Commonwealth v. Cain*, 29 A.3d 3, 6-7 (Pa. Super. 2011) (some citations omitted).

Similar to his previous claim regarding his motion to sever, Appellant attempts to distinguish the Dauphin County robbery from the Cumberland County robberies is unpersuasive. The fact that Appellant did not wear a signature uniform in all four robberies or enter the bank at the same time of day does not defeat the probative value of the Commonwealth's proffer as

common scheme. *See Dozzo*, 991 A.2d 903-04. Further, the Dauphin County robbery was part of the history of the case, as it also led to Appellant's identification as the perpetrator of the Cumberland County robberies by Deputy Chief Hockenberry. The trial court cautioned the jury regarding the proper use of the evidence. N.T. Trial at 183. Having reviewed the record, we discern no basis to conclude that the trial court abused its discretion in permitting the Commonwealth to present evidence of the Dauphin County robbery.

Appellant's tenth and eleventh claims challenge the legality of his sentences in CR-3127-2010 and CR-3156-2010. Appellant's Brief at 29. He asserts his convictions for theft by unlawful taking and terroristic threats—recklessly causing terror should have merged with the greater offense of robbery—threatening serious bodily injury, and relies on *Commonwealth v. Walls*, 449 A.2d 690 (Pa. Super. 1982). *Id.* He asserts the thefts were a necessary part of the robberies, and his convictions for robbery and terroristic threats were based on the notes passed to the tellers. *Id.* The trial court agrees and suggests that we vacate its concurrent sentences on those counts. Trial Ct. Op., 6/16/15, at 3-4. The Commonwealth does not object to vacating the sentences. Commonwealth's Brief at 35.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of

review is *de novo* and our scope of review is plenary." ***Commonwealth v.***

***Quintua***, 56 A.3d 399, 400 (Pa. Super. 2012).

The ***Quintua*** Court ably summarized the developments of the

Commonwealth's merger jurisprudence.

> Whether these two offenses merge will turn on Section 9765 of the Sentencing Code, which addresses merger and provides:
>
> ### § 9765. Merger of sentences
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act **and** all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.
>
> 42 Pa.C.S.A. § 9765 (emphasis added).
>
> [***Commonwealth v. Jones***, 912 A.2d 815 (Pa. 2006)] addressed the merger of burglary and criminal trespass under Section 9765, but the Court was unable to agree on the appropriate test for merger. The lead opinion favored a "practical, hybrid approach" that looks to the statutory elements of the respective crimes and evaluates whether the defendant was charged and convicted on a single set of facts that satisfies both offenses. The ***Jones*** lead opinion rejected a strict "elements based" approach to merger and concluded that, under the facts presented, criminal trespass and burglary merged, despite their different statutory elements. The dissenting opinion in ***Jones***, however, favored the statutory elements approach to merger, expressly disapproving of the fact-based approach advocated by the lead opinion. In the dissent's view, Section 9765 set forth a clear test, where merger will occur only where all statutory elements of one offense are included in the other offense. The dissent examined the elements of criminal trespass and burglary before

- 25 -

concluding the crimes should not merge because each offense required proof of an element the other did not.

Just three years later, our Supreme Court revisited its approach to merger. *See Commonwealth v. Baldwin*, 604 Pa. 34, 985 A.2d 830 (2009). In a majority decision, *Baldwin* adopted the *Jones* dissent's reasoning and held the plain language of Section 9765 reveals a legislative intent "to preclude the courts of this Commonwealth from merging sentences for two offenses that are based on a single criminal act unless all of the statutory elements of one of the offenses are included in the statutory elements of the other." *Baldwin* rejected the "practical, hybrid approach" advocated in the lead *Jones* plurality opinion. Instead, *Baldwin* held that when each offense contains an element the other does not, merger is inappropriate.

This Court has similarly parted ways with the *Jones* lead opinion and adopted the *Jones* dissent as setting forth the proper analysis for merger. Therefore, notwithstanding the plurality's conclusion in *Jones* regarding merger of criminal trespass and burglary, the current state of merger law in Pennsylvania makes clear there is no merger if each offense requires proof of an element the other does not. The "practical, hybrid approach" espoused in the *Jones* lead opinion is not the proper test for merger.

*Id.* at 400-01. The *Quintua* Court proceeded to hold that criminal trespass and burglary did not merge under an elements test because each offense required proof of an element the other did not. *Id.* at 402.

Section 9765 thus "may put a draconian end to merger claims." *Baldwin*, 985 A.2d at 839 (Castille, J., concurring); *cf. Commonwealth v. Rhoades*, 8 A.3d 912, 918 (Pa. Super. 2010) (holding aggravated assault—serious bodily injury and aggravated assault—bodily injury with deadly weapon, 18 Pa.C.S. § 2702(a)(1), (4) did not merge under Section 9765);

*Commonwealth v. Dobbs*, 682 A.2d 388, 390 (Pa. Super. 1996) (holding separate sentences for 18 Pa.C.S. § 2702(a)(1), (4) for same crime would violate double jeopardy, but decided before current version of Section 9765). However, some exceptions and legacies remain. The burglary statute contains an independent provision that precludes separate sentence for both a burglary and an intended offense unless that offense constitutes a felony of the first or second degree. *See* 18 Pa.C.S. § 3502(d). Separate sentences for driving under the influence of alcohol have generally been merged without consideration of the statutory elements—*e.g.*, an inability to drive safely under 75 Pa.C.S. § 3802(a), and the *per se* blood alcohol levels under 75 Pa.C.S. § 3802(a)(1), (b)-(c). *See Commonwealth v. McCoy*, 895 A.2d 18, 27 (Pa. Super. 2006).

Turning to the instant case, the relevant elements of robbery—threatening immediate bodily injury are:[12]

> (1) the defendant intentionally put the victim in fear of immediate serious bodily injury, and
>
> (2) the defendant did so in the course of committing a theft.

*See* 18 Pa.C.S. § 3701(a)(1)(ii).

---

[12] In determining the relevant elements of the offenses for applying Section 9765, we find guidance in *Baldwin* that the elements test should not be applied in a vacuum. *See Baldwin*, 985 A.2d at 837 n.6. Thus, we consider the particular violations of law at issue in the particular case, and rely on the trial court instructions to the jury when defining the elements of the relevant crimes.

The relevant elements of theft by unlawful taking are:

> (1) the defendant took or exercised control of property,
>
> (2) the property was moveable property of another
>
> (3) the taking was unlawful, and
>
> (4) the defendant took the property with the intent to deprive the other of his property.

*See* 18 Pa.C.S. § 3921(a).

Robbery does not require a completed theft. *See* 18 Pa.C.S. § 3701(a)(2) ("An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission."); *Commonwealth v. Robinson*, 936 A.2d 107, 109 (Pa. Super. 2007) (noting acquittal on theft does not require acquittal on robbery). Theft, therefore, contains an element not contained in robbery, *i.e.*, a completed taking of property.[13] Robbery contains an element not contained in theft, namely, some use of force, *i.e.*, placing the other person in fear of serious bodily injury. Thus, a rigid interpretation of Section 3701(a)(2) and application of Section 9765 suggest robbery and theft would not merge.

However, our case law suggests a universal interpretation that the "in the course of a theft" element of robbery subsumes theft, whether

---

[13] Moreover, theft is graded by the value of the property taken. *See* 18 Pa.C.S. § 3903. Therefore, the value of the property is an *Apprendi* "element." *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

attempted or completed. *See Commonwealth v. Humphey*, 532 A.2d 836, 844 (Pa. Super. 1987) (concluding "because the theft was a part and parcel of the robbery, . . . theft by receiving stolen property was subsumed into the robbery for sentencing purposes"); *Walls*, 449 A.2d at 695; *Commonwealth v. Moore*, 446 A.2d 960, 963 (Pa. Super. 1982); *Commonwealth v. Eberts*, 422 A.2d 1154, 1156 (Pa. Super. 1980) (*en banc*) (*per curiam*); *Commonwealth v. Turner*, 402 A.2d 542, 544 (Pa. Super. 1979) (concluding, "By definition, robbery is committed 'in the course of committing a theft[;' t]herefore, robbery necessarily involves theft and the offenses merge for sentencing purposes"); *Commonwealth v. Brazzle*, 416 A.2d 536, 539 (Pa. Super. 1979) (concluding, "theft is a necessary ingredient of robbery"); *Commonwealth v. Brooks*, 363 A.2d 1132 (Pa. Super. 1976) (*per curiam*). Our review reveals no appellate decision in this Commonwealth permitting separate sentences for theft and robbery.

In light of the foregoing authority, we conclude that the general merger provision in Section 9765 does not evince the General Assembly's intent to displace our prior case law holding that a theft is necessary element or a lesser-included offense to robbery. Accordingly, we vacate the sentences imposed on the counts of theft by unlawful taking.

The relevant elements of terroristic threats—causing terror are:

(1) the defendant communicated a threat, and

(2) the defendant communicated the threat to cause terror with reckless disregard for the risk of causing such terror.

*See* 18 Pa.C.S. § 2706(a)(3).

There is not a complete identity between the elements of terroristic threats and robbery in this case. Nevertheless, "putting another in fear of serious bodily injury" subsumes "communicating a threat to cause terror." That robbery includes an additional element of fear of serious bodily injury and a greater *mens rea* of intent rather than recklessness suggests it is a greater offense of terroristic threats. The semantic differences between threatening serious bodily injury and causing terror do not evince the General Assembly's intent to permit separate sentences when both crimes arise out a single act. Thus, we conclude that terroristic threats should have merged in this case.[14] Since our conclusion that the sentences for theft by unlawful taking and terroristic threats will not affect the trial court's sentencing scheme, a remand for resentencing is unnecessary. *See Commonwealth v. Hernandez*, 488 A.2d 293, 303 (Pa. Super. 1985).

Appellant's final claim is that the trial court improperly instructed the jury on serious bodily injury, bodily injury, and robbery. The challenged instructions were given after the jury submitted questions during its deliberations. At the outset, we note this claim is waived for failure to object. *See* Pa.R.A.P. 302(b). In any event, we have reviewed the

---

[14] We are mindful that there are alternative bases for culpability under the robbery and terroristic statutes, which may not merge. However, we reiterate that we follow the admonition set forth in *Baldwin* to consider the particular crime in a particular case.

challenged instructions and discern no merit to Appellant's claim that the court's instructions confused the differences between serious bodily injury and bodily injury. Further, in light of **Jannett**, we discern no legal error in the trial court's instruction that the jury did not have to find Appellant possessed a firearm to find him guilty of robbery—threatening serious bodily injury.

Sentences for terroristic threats and theft by unlawful taking vacated. Judgment of sentence otherwise affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2015