418 A.2d 534

**COMMONWEALTH of Pennsylvania**

v.

**Raymond YOCUM, Appellant.**

Superior Court of Pennsylvania.

Submitted June 29, 1979.

Filed Jan. 18, 1980.

534

Jeffrey P. Bowe, Assistant Public Defender, Pottsville, for appellant.

Richard B. Russell, District Attorney, Pottsville, for Commonwealth, appellee.

Before WIEAND, ROBINSON and LOUIK, JJ.*

LOUIK, Judge:

Sometime after midnight on December 22, 1977, a burglary occurred at Scrafford's Restaurant in Rush Township, Schuylkill County, Pennsylvania. Taken in the burglary was 24 lobster tails, 50 steaks, 15 bottles of liquor, 26 bottles of wine, $260.00 in currency and a bar lamp. Subsequent to a State Police investigation, an inculpatory statement was given by Stuart Warne on December 23, 1977. Warne's

* Judge Donald E. Wieand is sitting by special designation. President Judge Otto P. Robinson of the Court of Common Pleas of Lackawanna County, Pennsylvania, and Judge Maurice Louik of the Court of Common Pleas of Allegheny County, Pennsylvania, is sitting by designation.

confession named John Plasko, Edward Gibas and Appellant Raymond Yocum as being involved in the burglary and stated that he, Warne, helped carry the merchandise to Appellant's apartment. On December 29, 1977, Plasko denied knowledge of a burglary, but stated that he and the others helped Warne carry food and drink out of the restaurant into an apartment occupied by Appellant. Plasko also gave a statement to the police which implicated Appellant in the burglary.

With this information, State Police on December 30, 1977, obtained a search warrant for Yocum's apartment which was executed the same day. The bar lamp which was taken during the burglary was seized from the apartment. Yocum was then arrested and charged with burglary and receiving stolen property and he gave a statement to police indicating that while the three others came to his apartment with beer, wine, whiskey, lobster tails and steaks with which they had a party, he wasn't told where it all came from and that he had not been in Scrafford's Restaurant. On May 18, 1978, Appellant was convicted by a jury of receiving stolen property.

Appellant's first argument is that testimony given by Plasko and Warne was so conflicting as to be insufficient evidence as a matter of law upon which a jury could base a verdict of guilty. The testimony to which appellant refers is Warne's testimony that: (1) he was in a card game the night before with the owner of Scrafford's; (2) the owner had given him the keys to the restaurant; and (3) he was the caretaker of the restaurant for the holidays. In Appellant's argument, this testimony was in direct conflict and contradiction to Plasko's testimony, that Warne also said in addition to the above that: (1) he won money from the boss during the card game; and (2) his boss had given him the food and liquor. According to Plasko, Gilas asked Warne about the items and Warne replied that they were left over from a Christmas party the previous night and would spoil anyway.

■ We fail to see how the testimony of these two men are "diametrically opposed" as Appellant contends. On the contrary, it is conceded by Appellant that Plasko's testimony of Warne's statements was only in addition to and a supplement of Warne's own account rather than contradictory of what he said that night. In fact, Plasko's testimony tended to show further that Warne's various explanations were inconsistent and would not reasonably lead anyone to believe the items were obtained legitimately. Therefore, since these statements conflict only in that Plasko's account seems to go further in uncovering what was said that night, Appellant's reliance upon *Commonwealth v. Bennett*, 224 Pa.Super. 238, 303 A.2d 220 (1973) is misplaced.

■ Even if these statements could be seen as inconsistent, they along with other minor inconsistencies which Appellant points out, do not rise to the level of requiring the court to take the role of the finder of fact away from the jury. As the *Commonwealth v. Bartell*, 184 Pa.Super. 528, 136 A.2d 166, 172 (1957) states:

"It is true, of course, that a case should not go to a jury where the party having the burden offers testimony of a witness, or of various witnesses, which is so contradictory on the essential issues that any finding by the jury would be a mere guess (citations omitted). However, the mere fact that there are some inconsistencies is not alone sufficient to destroy the case. (citations omitted). The function of a jury is to reconcile conflicting testimony; it is only when the testimony is so contradictory on the basic issues as to make any verdict based thereon pure conjecture that the jury should not be permitted to consider it."

There was no such contradictory test as to an essential issue presented.

Further, the bar lamp found hidden in the Appellant's apartment does not seem to qualify as a "leftover" from a Christmas party and as the lower court stated in its Opinion:

". . . may itself have provided the illumination to the jury through which they were able to find the defendant guilty." P. 5 Opinion.

■ In consideration of all of the above, there was enough evidence presented to the jury upon which they could find scienter and, therefore, guilt, beyond a reasonable doubt.

The Appellant next argues that the eight days between the burglary and the search of Appellant's apartment, given the nature of the items taken, made the warrant for the search stale.

■ Appellant correctly cites *Commonwealth v. Jones*, 229 Pa.Super. 224, 323 A.2d 879 (1974) as stating the guidelines in determining the "staleness" of a warrant. To be considered is (1) The nature and quality of items to be seized; (2) time lapse and (3) ease with which items may be disposed. Whether these items could be easily disposed of, even if the police are charged with the knowledge that the items would be used for a party as appellant suggests, is succinctly and literally stated by the trial court in its Opinion.

".   .   . It cannot be seriously contended that a lapse of seven days from the information of the first informant and one day from the second informant's information would result in the information becoming stale. There is hardly time for the missing lobster tails and steaks to become tainted let alone information relating to their pilferage.   .   .   .

.   .   . Counsel's argument presupposes that this veritable cornucopia of epicurean comestibles would be devoured in eight days and that therefore criminal activity ceased to exist or continue. This is toying with the fallacious. Common sense requires us to believe that the items comprising this delectable swag would not all be eaten in slightly over a week, a gastronomic feat worthy of Henry VIII at his best."

Even the most accomplished party-givers would have reason to believe that something of this booty would remain, after even the best of parties.

**538**

For all of the above reasons, judgment of the lower court is affirmed.

This decision was reached following the death of ROBIN-SON, J.