J-S77021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GLENN GRADY WALKER, III | : | |
| | : | |
| Appellant | : | No. 494 MDA 2017 |

Appeal from the Judgment of Sentence January 12, 2017
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002550-2016

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS*, P.J.E.

MEMORANDUM BY LAZARUS, J.:                  **FILED FEBRUARY 23, 2018**

Glenn Grady Walker, III, appeals from the judgment of sentence, entered in the Court of Common Pleas of Dauphin County, after he was convicted, in a jury trial, of first-degree murder,[1] possession of a firearm without a license,[2] and discharge of a firearm into an occupied structure.[3] After careful review, we affirm.

On December 15, 2015, Pennsylvania State Capitol Police Department Sergeant Dave DeLellis was on patrol driving in the area of Third and Calder Streets in Harrisburg, Pennsylvania.  While on patrol, Sergeant DeLellis heard between six and ten gunshots and observed several men firing handguns.

---

[1] 18 Pa.C.S.A. § 2502(a).

[2] 18 Pa.C.S.A. § 6106.

[3] 18 Pa.C.S.A. § 2707.1.

---

\*   Former Justice specially assigned to the Superior Court.

Sergeant DeLellis pursued the men, one of whom he subsequently identified as Walker, but he was unable to apprehend any of the shooters. Video evidence from security cameras at a bar located at the corner of Third and Calder Streets showed Walker and a friend brandishing firearms; Walker's father, Glenn Walker, Jr., was also present at the scene. The shooting stemmed from an incident involving Walker, Jr. and an unknown fourth male who allegedly attacked him; Walker purportedly fired at the alleged attacker in retaliation. Police collected several items from the scene of the December shooting, including two different .45 cartridges and a projectile.[4]

Approximately 3½ months later, on March 26, 2016, John Carter and his fiancée, Kristian Cammack, were driving through Harrisburg with his two children. Cammack was driving in the area of Woodbine and Green Streets when she and Carter noticed a group of men staring at them and their vehicle; they did not recognize the men. Shortly thereafter, Cammack drove into a convenience store parking lot and briefly parked. Carter exited the vehicle and directed Cammack to drive around the block while he finished smoking a blunt and confronted the men who had been staring at the family.

One of the men in the group, Taj Abdullah, an associate or friend of Walker, was seen on surveillance video with Walker and Shawn Jones outside of Abdullah's home on the day of the shooting. After Cammack drove away,

---

[4] The subsequent investigation was carried out by the Harrisburg Police Department, not the Pennsylvania State Capitol Police Department force on which Sergeant DeLellis served.

- 2 -

Carter approached the three men and an altercation erupted between Jones, Abdullah, Walker and Carter. Carter, outnumbered, fled on Woodbine Street; Jones and Walker pursued him on foot. Jones and Walker, during their pursuit, produced firearms and shot at Carter as he fled. Walker, specifically, discharged two rounds in Carter's direction. One of the projectiles struck Carter in the back and wounded him fatally.

Meanwhile, Cammack, per Carter's instructions, drove around the block with Carter's children, but upon return, could not find Carter. She then drove up Woodbine Street, after which she discovered Carter lying on the ground fatally wounded from a gunshot to the back. During the subsequent investigation, Police recovered shell casings from the scene of the March shooting as well as a gold "grill" which, when tested, carried traces of Jones' DNA. Police also recovered a projectile from Carter's corpse, but never recovered the firearm used in the shooting. Police submitted the recovered shell casings and projectile for ballistics testing and they were found to match ballistics evidence recovered from the December shooting.

Following trial, a jury found Walker guilty of the foregoing charges. The trial court sentenced Walker to life in prison without parole. Walker filed a timely post-sentence motion challenging the weight of the evidence on January 23, 2017, which the trial court denied by order dated March 7, 2017. On March 15, 2017, Walker filed a timely notice of appeal. Both Walker and the trial court have complied with Pa.R.A.P. 1925. Walker raises the following issues on appeal:

1.    Did not the court err in permitting the Commonwealth to introduce prior bad-fact-evidence detailing [Walker's] involvement in an unrelated shooting incident that occurred three months prior to the events that were the subject matter of the trial?

2.    Did not the court err in denying [Walker's] objection to the Commonwealth's ballistics expert's stating that he can, to a "scientific certainty," provide testimony that certain items of ballistic evidence came from the same gun?

3.    Did not the lower court abuse its discretion by failing to grant [Walker] a new trial on the basis that the guilty verdict was against the weight of the evidence when the totality of the evidence as to the issues of specific intent to kill and imperfect self-defense was unreliable, contradictory, and incredible?

Brief of Appellant, at 5.

First, Walker argues that the trial court should not have allowed the Commonwealth to present surveillance video evidence of the December shooting shown at his jury trial. Walker, Jr. had previously identified him as a participant in the December shooting, and the Commonwealth argued the video was necessary to identify the firearm and to show Walker previously possessed it. Our standard of review for admission of evidence is well settled:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

***Commonwealth v. Levanduski***, 907 A.2d 3, 13-14 (Pa. Super. 2006) (citation omitted).

The trial court admitted the video evidence pursuant to Pa.R.E. 404(b)(1) and (2). Pa.R.E. 404(b) provides as follows:

**(b) Crimes, Wrongs or Other Acts.**

(1) *Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

***(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.***

(3) *Notice in a Criminal Case*. In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b) (emphasis added).

***[E]vidence of other crimes is admissible to demonstrate*** (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or ***(5) the identity of the person charged with the commission of the crime on trial.*** Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts.

***Commonwealth v. Dozzo***, 991 A.2d 898, 902 (Pa. Super. 2010), quoting

***Commonwealth v. Collins***, 703 A.2d 418, 422-23 (Pa. 1997) (emphasis added) (brackets omitted).

The Commonwealth sought to present the video to (1) identify the firearm Walker used in the instant case, and (2) prove that Walker possessed the firearm at an earlier date. The Commonwealth's video depicts Walker exit a bar on December 15, 2015, approximately 3½ months before Carter was murdered, and discharging a firearm. Additionally, ballistics testing matched the tool markings on the cartridge cases recovered from the scenes of the December 15, 2015 shooting and the March 26, 2016 shooting, indicating Walker discharged the same gun in each instance. However, no witness was available to testify that Walker was previously in possession of the murder weapon on December 15, 2015. The trial court, taking all of the foregoing into consideration, allowed the Commonwealth to show the video to the jury on the narrow issue of identity only. We discern no abuse of discretion by the trial court in allowing the Commonwealth to present video evidence of Walker brandishing and discharging a firearm to corroborate his identity and show Walker previously possessed a firearm. **Dozzo**, **supra**.

Walker next claims that the trial court erred in denying his objection to the Commonwealth ballistics expert's testimony regarding the degree of scientific certainty of his findings. Expert testimony is admissible if it concerns a subject beyond the knowledge, information or skill possessed by the ordinary juror, as phenomena and situations that are matters of common knowledge may not be the subject of expert testimony. Pa.R.E. 702.

> Our standard of review in cases involving the admission of expert testimony is broad: Generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court,

and its rulings thereon will not be reversed absent an abuse of discretion. An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice.

***Commonwealth v. Watson***, 954 A.2d 174, 176 (Pa. Super. 2008).

At trial, the Commonwealth proffered the testimony of Pennsylvania State Trooper Todd Neumyer. Trooper Neumyer is a firearm and toolmark examiner with the Harrisburg Regional Crime Laboratory. At the conclusion of the Commonwealth's direct examination of Trooper Neumyer, the following exchange occurred:

> COMMONWEALTH: And those conclusions that you've shared here with this jury, are you doing so within ***a reasonable degree of certainty within your field***?
>
> TROOPER NEUMYER: Yes, both scientific –
>
> COUNSEL FOR WALKER: Objection, Your Honor. In regards to the bullets, I don't think an expert in firearm and tool[]mark can give an opinion to a reasonable degree of any kind of certainty. This is an opinion that he makes by observing the different markings and – microscopic markings. I just don't know that that's an acceptable degree of certainty for this type of expert.
>
> TRIAL COURT: Overruled.

N.T. Jury Trial, 1/10/17, at 474-75 (emphasis added).

Trooper Neumyer went on to state that he could render an expert opinion within both scientific and professional degrees of certainty. Walker argues that Trooper Neumyer's testimony that an unknown Glock firearm was the source of ejected shell casings and discharged bullets implicates the validity of whether an expert can present to a degree of scientific certainty ballistics-match testimony. Specifically, Walker cites to the findings of a study

entitled "Firearms Identification and the Use of Ballistics Evidence," which asserts that the validity of ballistics-match testimony has not yet been fully scientifically demonstrated.  Brief of Appellant, at 29-30.  Walker also cites to **United States v. Green**, 405 F.Supp.2d 104, 123 (D. Mass. 2005), wherein the Government's ballistics expert was permitted to identify toolmarks left on shell casings, but was not allowed to testify as to his conclusions that the match he had found excluded all other guns as the source of said shell casings. **Id.**

Instantly, Walker asks us to reassess the general admissibility of forensic firearms evidence.  We decline to do so.  In **Commonwealth v. Whitacre**, 878 A.2d 96 (Pa. Super. 2005), this Court held that expert ballistic matching evidence obtained by a comparison microscope, as in the instant matter, is "generally accepted by the scientific community consisting of firearms experts."  **Id.** at 101 ("The comparison microscope examination method has been in use since the 1930's and is an accepted methodology by the Association of Firearms and Toolmark Examiners.").  **See also Commonwealth v. Vandivner**, 962 A.2d 1170 (Pa. 2009) (expert in field of firearm and toolmark examination determined that bullet recovered from victim's brain was fired from handgun found in defendant's possession at time of his apprehension).  Accordingly, we discern no abuse of discretion by the trial court in overruling Walker's objection to Trooper Neumyer's testimony. **Watson**, **supra**.

- 8 -

Lastly, Walker claims that his conviction was contrary to the weight of the evidence. Specifically, Walker avers that (1) contradictions of witnesses' testimony were irreconcilable, (2) substantial indisputable evidence existed to undermine the credibility of the witnesses, and (3) the jury should have found him guilty of the lesser charge of voluntary manslaughter[5] because he was acting in "unreasonable belief self-defense."[6] His claim is meritless.

---

[5] 18 Pa.C.S.A. § 2503(b).

[6] Voluntary manslaughter pursuant to section 2503(b) is defined as:

> **(b) Unreasonable belief killing justifiable.–**A person who intentionally kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title, but his belief is unreasonable.

> 18 Pa.C.S.A. § 2503(b).

"The elements necessary to establish reasonable belief manslaughter, which is sometimes loosely referred to as 'imperfect self-defense' require proof of an 'unreasonably belief rather than a reasonable belief that deadly force was required to save the actor's life.'" *Commonwealth v. Ventura*, 975 A.2d 1128, 1143 (Pa. Super. 2009) (citation omitted). "All other principles of justification under 18 Pa.C.S.[A.] § 505 must still be met in order to establish unreasonable belief voluntary manslaughter." *Id.*

Section 505 sets for the elements of self-defense:

> **§ 505. Use of force in self protection**

> **(a) Use of force justifiable for protection of the person.**–The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

18 Pa.C.S.A. § 505(a).

The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. ***A new trial should not be granted because of a mere conflict in the testimony*** or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Mucci*, 413 A.3d 399, 410-11 (Pa. Super. 2011) (emphasis added), quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). A "trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009).

The trial court provided the jury with instructions for the charges of first-degree murder and voluntary manslaughter. "A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S.A. § 2502(a). To obtain a conviction for first-degree murder, the Commonwealth must demonstrate that a human being was unlawfully killed, that the person accused did the killing, and that the killing was done with deliberation. *Commonwealth v. Marrero*, 687 A.2d 1102 (Pa. 1996).

Additionally, specific intent to kill, as an element of first-degree murder, can be established through circumstantial evidence such as the use of a deadly weapon on a vital part of the victim's body. ***Commonwealth v. Diamond***, 83 A.3d 119 (Pa. Super. 2013).

In finding Walker guilty of first-degree murder beyond a reasonable doubt, the jury found the Commonwealth's witnesses to be credible and reconciled any discrepancies in the witnesses' testimony. ***See Commonwealth v. Yocum***, 418 A.2d 534, 536 (Pa. Super. 1980) (citation omitted) ("The function of a jury is to reconcile conflicting testimony; it is only when the testimony is so contradictory on the basic issues as to make any verdict based thereon pure conjecture that the jury should not be permitted to consider it."); ***see also Commonwealth v. Battle***, 433 A.2d 496, 498 (Pa. Super. 1981) (determination of credibility of witnesses is within sole province of jury). Moreover, it was well within the purview of the jury to find Walker guilty of first-degree murder where the evidence showed he used a deadly weapon to shoot Carter in the torso. ***Diamond***, ***supra***.

The trial court instructed the jury on first-degree murder and voluntary manslaughter, and the jury nonetheless found Walker guilty of the latter. We discern no abuse of discretion in the trial court's conclusion that Walker's convictions did not shock one's sense of justice. ***Mucci***, ***supra***. Accordingly, we affirm Walker's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2018