J-S37022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM WILSON | : | |
| | : | |
| Appellant | : | No. 975 EDA 2019 |

Appeal from the Judgment of Sentence Entered October 25, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0006125-2017

BEFORE: SHOGAN, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED OCTOBER 27, 2020**

Appellant William Wilson appeals from the judgment of sentence imposed after a jury convicted him of third-degree murder, conspiracy, aggravated assault with a deadly weapon, aggravated assault, possession of an instrument of crime, and unsworn falsification to authorities.[1] Appellant argues that the trial court abused its discretion by denying his motion to sever and by allowing the Commonwealth to introduce redacted versions of his statements at trial. We affirm.

The trial court summarized the underlying facts of this matter as follows:

On July 6, 2017, at approximately 6pm, video surveillance captured 30-year old [Appellant] driving his dark grey 2013 Dodge Charger (PA registration KKG-5913) in Norristown, Montgomery County, accompanied in the front seat by his 18-year old co-

_____

[1] 18 Pa.C.S. §§ 2502(c), 903(a)(1), 2702(a)(4), 2702(a)(1), 907(a), and 4904(a)(1), respectively.

Defendant, Isaiah Freeman ([co-defendant Freeman]). A juvenile male related to [Appellant], and identified herein as B.B., occupied the rear of the vehicle. Minutes earlier, [Appellant] and co-defendant Freeman had decided that co-defendant Freeman would shoot 16-year old Jordan Scott (Scott) and his juvenile friend Taye Wynder (Wynder), who they had caught sight of walking on the sidewalk near the intersection of Oak and Astor Streets. [Appellant] immediately sped up, making his way to Blackberry Alley where he pulled his car to a stop, left the engine running, and drew two handguns from under his driver's seat which he offered to co-defendant Freeman. Surveillance depicts Freeman exiting Appellant's vehicle, running up Blackberry Alley from the corner of Chain Street with a dark hoody drawn over his head to conceal his identity, jumping out from around the building corner at Chain Street, and repeatedly firing the black handgun [Appellant] handed him in the car, fatally wounding Scott, and seriously injuring Wynder.

\* \* \*

[W]hen Norristown Police officers responded to 623 Chain Street, they located Scott lying on the sidewalk bleeding to death, with Wynder nearby having fled to safety to a rear yard west of Chain Street. Scott, who was immediately transported to the hospital, was pronounced dead at 7:28pm. Hours after the murder, [Appellant] initiated contact with law enforcement, and made arrangements to come into the Montgomery County Detectives Bureau to speak with them. Ultimately, some days later and contrary to previous written statements given by [Appellant] to police, he admitted that "he himself was actually driving his car, and he drove [co-defendant Freeman] to the scene of the murder," all of which was corroborated by video surveillance capturing the entirety of the episode. The investigation conducted by police culminated in the issuance of arrest warrants for both [Appellant] and co-defendant Freeman.

Trial Ct. Op., 12/23/19, at 1-2.

Co-defendant Freeman also provided a statement to police at the time of his arrest. Initially, co-defendant Freeman stated that Appellant drove him to the murder scene, provided him with a gun, and instructed him to shoot the victims. Homicide Supp. Rep., 8/30/17, at 3. Co-defendant Freeman

stated that after he refused to comply with Appellant's directive, Appellant exited the vehicle and shot the victims while co-defendant Freeman remained in the front passenger seat of Appellant's car. *Id.*

After co-defendant Freeman confirmed that he was wearing a dark-colored hoodie at the time of the murder, homicide detectives informed co-defendant Freeman that there was surveillance footage showing that "the person who shot the decedent was wearing a dark colored hoodie and got out of the passenger side of Appellant's car." *Id.* at 4. When presented with that information, "[Co-defendant] Freeman then began to cry. He said, 'my life is over, I'm going to jail for the rest of my life.' [Co-defendant] Freeman then refused to answer any more questions" and requested an attorney. *Id.* at 4.

On December 15, 2017, the Commonwealth filed a pretrial motion to consolidate the charges against Appellant and co-defendant Freeman. Commonwealth's Pretrial Mot., 12/15/17, at 9. Appellant filed a motion in which he argued that a joint trial would "prevent [him] from meaningful cross-examination in violation of his right to confrontation under the Sixth Amendment of the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution." Omnibus Pretrial Mot., 12/18/17, at 7. Appellant further claimed that co-defendant Freeman's statement implicated Appellant and could not "be cured in a fashion that does not violate [Appellant's] right to confront witnesses against him" under *Bruton v. United States*, 391 U.S. 123 (1968). Mot. to Sever, 12/18/17, at 1 (unpaginated).

The Commonwealth filed a response arguing that severance was unnecessary, as "appropriate redactions can cure any potential violations" that would result from using either Appellant or co-defendant Freeman's statements at a joint trial. Commonwealth's Resp., 1/17/18, at 3. Further, the Commonwealth asserted that the proposed redactions to the statements were consistent with Pennsylvania law interpreting *Bruton* and its progeny. *Id.* at 6.

The trial court conducted pretrial motions hearings with both Appellant and co-defendant Freeman on March 30, 2018 and April 4, 2018. In support of severance, Appellant's counsel stated:

> Quite frankly, judge, I don't know if it's my motion to sever. More likely [co-defendant Freeman's], for this reason. Because my guy gave so many different statements to so many different people. And with [thirty-eight] years of practice in law, I know I can't put him on the stand. So the motion might go to him. And when I say I can't put him on the stand, I mean at trial I can't put him on the stand, because he gave so many different statements to everybody. And it's the Commonwealth's burden to prove it, and I'm just going to attack their proof. So although I'm asking for a severance, I have no evidence to offer.

*See* N.T. Mot. Hr'g, 3/30/18, at 120.

At the second motions hearing, Appellant's counsel reiterated that he was "still looking for a severance. But if the [c]ourt is inclined to deny that motion for severance, then I have reviewed what the Commonwealth has reviewed as far as redaction. And although I'm not happy with it, I don't know what else we can do with it." N.T. Mot. Hr'g, 4/4/18, at 8. Ultimately, the

trial court granted the Commonwealth's motion to consolidate and both matters were listed for a joint trial.  Trial Ct. Order, 4/12/18.

At the start of trial, the trial court asked defense counsel to decide, for **Bruton** purposes, whether the redacted or unredacted versions of each co-defendant's statement should be read to the jury.  **See** N.T. Trial, 4/18/18, at 6.  Co-defendant Freeman's counsel requested that the Commonwealth present the redacted versions of Appellant's statements.  **Id.**  Appellant's counsel indicated that the Commonwealth could present the unredacted version of co-defendant Freeman's statement, which referred to Appellant by name.  **Id.** at 7.

At trial, the Commonwealth introduced Appellant's redacted statements into evidence without objection.  **Id.** at 28; Trial Ex. 49.  Detective Crescitelli also testified regarding the substance of Appellant's statements to homicide detectives.  N.T. Trial, 4/22/18, at 37.  Consistent with the parties' agreement, all references to co-defendant Freeman and B.B. were changed to "the guy" and "the other guy."  **Id.** at 44-58.

Shortly thereafter, during a scheduled recess, trial counsel stated that he had "a real problem" with the redacted version of Appellant's July 9, 2017 statement that was read to the jury.  **Id.** at 65.  Trial counsel argued that the references to "the guy" and "the other guy" made it appear as though Appellant was being evasive in his answers to police.  **Id.**  Trial counsel requested that he be permitted to cross-examine Detective Crescitelli in a manner that would demonstrate to the jury that Appellant had provided the

detectives with actual names. *Id.* Co-defendant Freeman objected, arguing that such questions would likely violate ***Bruton***. The trial court denied Appellant's request.

On the last day of trial, co-defendant Freeman ultimately chose to testify. Co-defendant Freeman testified that he shot both victims, but that he did so in self-defense. N.T. Trial, 4/20/18, at 204-316. On cross-examination by Appellant, co-defendant Freeman minimized Appellant's role in the shooting, stating that Appellant did not provide him with a gun, did not encourage him to shoot the victims, and did not otherwise assist him in the shooting. *Id.* at 265-66. Co-defendant Freeman also stated that he lied to police and that he "tried to blame everything on [Appellant]" and "make [Appellant] the bad guy." *Id.* at 279.

Before closing arguments, Appellant requested that his statement be unredacted for closing arguments. *See* N.T. Trial, 4/23/18, at 6. In the alternative, Appellant asked the Commonwealth to dismiss his charges for making false statements, asserting that he could not "argue that he was telling the truth when he sounds like he's evasive in the statement." *Id.* The Commonwealth objected, arguing that the unredacted statements would "make the police look like they were lying." *Id.* After the trial court denied Appellant's request, he asked that he be permitted to reference the fact that his statement was redacted during closing arguments. *Id.* at 11. However, the trial court denied his request. *Id.*

On April 23, 2018, the jury convicted co-defendant Freeman of first-degree murder. *Id.* at 219. The jury acquitted Appellant of first-degree murder and conspiracy to commit first-degree murder, but found him guilty of third-degree murder and the remaining charges against him. *Id.* at 219-221.

On October 25, 2018, the trial court sentenced Appellant to an aggregate term of thirty-five to seventy years' imprisonment. Appellant filed a timely post-sentence motion, which the trial court denied.

On April 28, 2019, Appellant filed a timely *pro se* notice of appeal.[2] Appellant subsequently filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion concluding that Appellant waived his claims, but that in any event, both issues were meritless.

Appellant raises the following issues on appeal:

1. Did the [trial] court err in its denial of Appellant's request and motion to sever the case from that of [co-defendant Freeman] and in conducting joint trials?

2. Did the [trial] court err in allowing the Commonwealth to submit into evidence Appellant's highly redacted statements inasmuch as the heavily redacted statements were prejudicial to Appellant in the following manner:

   A. Appellant's credibility was immediately rendered unreliable due to the great number of redactions;

_____

[2] The trial court docketed Appellant's timely *pro se* notice of appeal on April 28, 2019. This Court subsequently remanded the matter for a determination as to whether trial counsel abandoned Appellant for purposes of appeal. **See** Order, 6/28/19. On remand, the trial court appointed new counsel to represent Appellant for purposes of his direct appeal.

   B. There was no reason to redact the statements given that the co-defendant testified and admitted he was the shooter;

   C. Appellant may have been able to testify had the statements not been redacted;

   D. A proper closing argument was rendered impossible due to the great number of redactions in Appellant's statements; and,

   E. The large number of redactions clearly expressed to the jury that Appellant was being evasive in his answers to the police when it was clear from all the evidence that co-defendant Freeman had shot the victims.

Appellant's Brief at v (full capitalization omitted).

In his first issue, Appellant argues that the trial court abused its discretion by denying his motion to sever. *Id.* at 9. Addressing the factors that establish prejudice, Appellant argues that (1) "the exhaustive redaction of Appellant's statements," which was done in order to satisfy **Bruton**, made the evidence "clearly confusing" for the jury; (2) co-defendant Freeman's statement implicating Appellant would not have been admissible against Appellant in a separate trial; and (3) the parties' defenses were antagonistic, as Appellant "gave several statements to the police in which he blamed the shooting and murder on [co-defendant] Freeman. [Co-defendant] Freeman blamed Appellant and told police clearly and unequivocally that Appellant committed the crimes and that he had attempted days earlier to convince Freeman to shoot it out with [the decedent]." *Id.* at 12. Appellant acknowledges that co-defendant Freeman ultimately testified that he, and not Appellant, was responsible for the shooting. *Id.* However, Appellant asserts

that co-defendant Freeman's testimony is "of no relevance" in reviewing the merits of his severance claim. *Id.*

The Commonwealth responds that Appellant and co-defendant Freeman's cases "were properly joined for trial since their charges stemmed from the identical criminal episode, and [Appellant] made no attempt to show the real potential for prejudice required to justify severance." Commonwealth's Brief at 12. The Commonwealth contends that "[t]he same evidence was necessary and applicable to both defendants." *Id.* at 15. Further, the Commonwealth claims that Appellant failed to meet "his burden to offer more than speculation by showing 'real potential for prejudice' beyond the mere fact that he might have had a better chance of acquittal if tried separately." *Id.* In any event, the Commonwealth argues that Appellant did not suffer prejudice, because co-defendant Freeman "took full responsibility with his self-defense theory, denied that [Appellant] supplied the firearm at the time of the shooting, and claimed that [Appellant] did not know what co-defendant Freeman would do." *Id.* at 16. Further, the Commonwealth asserts that the fact that Appellant was "ultimately not prejudiced speaks to the reasonableness of the trial court's decision not to sever these cases." *Id.*

"Joinder and severance of separate indictments for trial is a discretionary function of the trial court; consequently, the trial court's decision is subject to review for abuse of that discretion." ***Commonwealth v. Brookins***, 10 A.3d 1251, 1255 (Pa. Super. 2010). "The critical consideration is whether the appellant was prejudiced by the trial court's decision not to

sever. The appellant bears the burden of establishing such prejudice." ***Commonwealth v. Dozzo***, 991 A.2d 898, 901 (Pa. Super. 2010) (citation omitted and some formatting altered).

Pursuant to Rule 582 of the Pennsylvania Rules of Criminal Procedure, "[d]efendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Pa.R.Crim.P. 582(A)(2).

Additionally, Rule 583 provides that "[t]he court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. However, "[u]nder Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." ***Dozzo***, 991 A.2d at 902 (citation omitted).

It is well settled that "the law favors a joint trial when criminal conspiracy is charged . . . ." ***Commonwealth v. Housman***, 986 A.2d 822, 835 (Pa. 2009) (citation omitted). Our Supreme Court has explained:

> Where . . . the crimes charged against each defendant arise out of the same facts and virtually all of the same evidence is applicable to both defendants, this Court, as well as the United States Supreme Court, have indicated a preference to encourage joint trials to conserve resources, promote judicial economy, and enhance fairness to the defendants:
>
> > It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring

separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.

Given this preference, the burden is on defendants to show a real potential for prejudice rather than mere speculation.

*Commonwealth v. Rainey*, 928 A.2d 215, 231-32 (Pa. 2007) (citations and quotations marks omitted).

In determining whether prejudice suffered by a defendant is sufficient to warrant severance, this Court has identified three factors:

(1) Whether the number of defendants or the complexity of the evidence as to the several defendants is such that the trier of fact probably will be unable to distinguish the evidence and apply the law intelligently as to the charges against each defendant; (2) Whether evidence not admissible against all the defendants probably will be considered against a defendant notwithstanding admonitory instructions; and (3) Whether there are antagonistic defenses.

*Brookins*, 10 A.3d at 1256 (citation omitted); *see also Rainey*, 928 A.2d at 232 (recognizing that although antagonistic defenses are a factor in determining prejudice, "the fact that defendants have conflicting versions of what took place, or the extent to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together." (citations, footnote, and quotation marks omitted)).

Here, the trial court concluded that Appellant waived his claim because trial counsel declined to make an argument or present any evidence in support of his motion to sever. *See* Trial Ct. Op. at 4. In any event, the trial court addressed Appellant's severance issue as follows:

Contrary to [Appellant's] assertion, the circumstances of the underlying case and the parties' proffered defense strategies as presented to the [trial c]ourt at the pretrial disposition of the severance motion established that [Appellant and co-defendant Freeman] should be tried jointly.

\* \* \*

[W]hile [Appellant's] statements point to another "guy" as the shooter and co-defendant Freeman's statement initially asserts "the guy" was the shooter, by the end of [co-defendant] Freeman's statement, he effectively admits that he was the shooter. Thus, [Appellant] and co-defendant [Freeman]'s statements were not in irreconcilable conflict at the time the [trial c]ourt determined the motion to sever [prior to] trial. Moreover, once co-defendant Freeman took the stand and admitted to being the shooter allegedly [acting] in self-defense, it became clear . . . that the jury did not have to disregard [Appellant's] defense in order to accept the defense of co-defendant Freeman.

Additionally, given the inextricably intertwined nature of each defendant's role in the criminal episode and the interrelated nature of their respective charges, including conspiracy, as well as the overlapping documentary, audiovisual, and testimonial evidence supporting [the d]efendants' criminal culpability, and particularly given [the d]efendants' redacted statements, the [trial c]ourt's initial consolidation and later denial of severance was appropriate. [Appellant's] claim to the contrary is meritless.

*Id.* at 11-13.

The trial court further concluded that any alleged error was harmless because

- 12 -

the realistic probability that co-defendant Freeman would have testified at a severed trial of [Appellant] is virtually nil, while as the joint trial unfolded, the probability of co-defendant Freeman testifying increased. There can be little question that the testimony of co-defendant Freeman coupled with his skillful cross-examination . . . resulted in an acquittal of [Appellant] of first degree murder, a result which most likely would not have occurred in a severed trial without co-defendant Freeman's testimony and cross-examination.

*Id.*

Based on our review of the record, we discern no abuse of discretion by the trial court in denying Appellant's motion to sever. *See Brookins*, 10 A.3d at 1255; *Dozzo*, 991 A.2d at 901. As discussed previously, both Appellant and co-defendant Freeman were charged with conspiracy for their participation in Scott's murder. *See* Pa.R.Crim.P. 582(A)(2); *see also Housman*, 986 A.2d at 835. Further, the verdict demonstrates that the jury was able to distinguish between the evidence against each defendant and applied the law to each of the individual charges. *See Brookins*, 10 A.3d at 1256. Finally, Appellant failed to establish the potential for undue prejudice if the cases were tried together. *See* Pa.R.Crim.P. 583; *see also Brookins*, 10 A.3d at 1255-56; *see also Rainey*, 928 A.2d at 231-32. Indeed, as noted by the trial court, the joint trial ultimately proved favorable for Appellant, as co-defendant Freeman took responsibility for shooting the victims, resulting in Appellant's conviction of the lesser charge of third-degree murder. *See Dozzo*, 991 A.2d at 904. Accordingly, Appellant is not entitled to relief on this claim.

- 13 -

In his remaining issue, Appellant argues that the trial court erred by "substantially redacting the statements of Appellant in order to preserve co-defendant Freeman's Sixth Amendment rights." Appellant's Brief at 15. Appellant asserts that the "large number of redactions" undermined Appellant's credibility by making him appear "evasive and untrustworthy." *Id.* at 18. Appellant further claims that the redactions were unnecessary because co-defendant Freeman testified at trial and admitted that he was the shooter. *Id.* at 15. Lastly, Appellant contends that the redacted statements prevented him from testifying, rendered trial counsel's closing argument "impossible," and gave the Commonwealth "an unfair advantage that clearly prejudiced Appellant." *Id.* at 18. Therefore, he concludes that he is entitled to a new trial. *Id.*

The Commonwealth responds that Appellant's statements were redacted based on the agreement between the parties. Commonwealth's Brief at 18. Further, the Commonwealth asserts that although Appellant claims that the redacted statements damaged his credibility and prevented him from testifying, his argument is "undermined by the fact that [Appellant] was never going to testify" and therefore, "[h]is credibility . . . was never at issue." *Id.* at 19. The Commonwealth emphasizes that "the trial court's decision to allow redaction by agreement. . . . was, and had to be, made before trial, at a time when it was not known whether co-defendant Freeman would testify, or how he would testify." *Id*. at 21. Finally, the Commonwealth concludes that even if the trial court erred in admitting Appellant's redacted statements, any error

was harmless, as co-defendant Freeman's testimony was ultimately favorable to Appellant and the evidence supporting Appellant's conviction was overwhelming. *Id.* at 22-23.

In order to preserve a claim of error for appellate review, a defendant must make a specific objection before the trial court in a timely fashion and at the appropriate stage of the proceedings. *Commonwealth v. May*, 887 A.2d 750, 758 (Pa. 2005). A defendant's failure to raise such an objection results in waiver. *Id.*; *see also* Pa.R.E. 103(a) (stating that a party may only claim error regarding the admission or exclusion of evidence if he or she makes a timely objection).

Here, the trial court concluded that Appellant waived this issue by failing to challenge the redactions before his statement was read to the jury at trial. *See* Trial Ct. Op. at 5, 10. Nonetheless, the trial court addressed Appellant's claim as follows:

> [Appellant's] instant claim ignores completely that the record in this case is rife with abundant evidence upon which the jury could have reasonably found [Appellant] untrustworthy, *e.g.*, his admission that he lied to investigators for which he was accordingly charged with two counts of unsworn falsification. . . .
>
> [Appellant] also ignores the fact that the same jury he claims would be suspect of his credibility given his redacted statements acquitted him of first degree murder; despite legally sufficient evidence to the contrary. The verdict reflects that the jury afforded [Appellant] some benefit of the doubt and/or measure of leniency, and did not render a verdict reflecting the full import of their power. In light of the ample evidence on which the jury could reasonably find [Appellant] not credible, any claim as to the admission of his redacted statements is meritless. As such,

- 15 -

[Appellant's] redaction issue, though not preserved, in any event fails.

\* \* \*

Moreover, the vacillating nature of [Appellant's] statements, admitting his involvement to varied extents, coupled with the overwhelming evidence presented by the Commonwealth, as enumerated above, renders any alleged error in the [trial c]ourt's admission of [Appellant's] redacted statements, harmless. . . . [Appellant's] contentions on appeal, if deemed preserved, amount to no more than harmless error in light of the credible evidence presented, and thus, merit no relief.

*Id.* at 14, 16.

Based on our review of the record, we agree with the trial court that Appellant waived this issue by failing to object to the admission of his redacted statements before they were admitted at trial. *See May*, 887 A.2d at 758; *see also* Pa.R.E. 103(a). Indeed, although the trial court addressed the redacted statements at both the pretrial hearing and at the start of trial, Appellant did not object. *See* N.T. Mot. Hr'g, 4/4/18, at 8; *see also* N.T. Trial, 4/18/18, at 6. Therefore, we decline to address this issue on appeal.

In any event, the trial court thoroughly addressed Appellant's claim and concluded that any error resulting from the redactions made to Appellant's statement was harmless. *See* Trial Ct. Op. at 13-15. Therefore, even if properly preserved, Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/27/2020</u>