J-A25040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN A BROWN | : | |
| | : | |
| Appellant | : | No. 1170 WDA 2021 |

Appeal from the Judgment of Sentence Entered May 10, 2021
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0004957-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN A BROWN | : | |
| | : | |
| Appellant | : | No. 1171 WDA 2021 |

Appeal from the Judgment of Sentence Entered May 10, 2021
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0004956-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN ANDREW BROWN | : | |
| | : | |
| Appellant | : | No. 1172 WDA 2021 |

Appeal from the Judgment of Sentence Entered May 10, 2021
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0001657-2016

J-A25040-22

BEFORE:   KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED: DECEMBER 08, 2022**

John Andrew Brown (Appellant) appeals from the judgments of sentence entered in the Westmoreland County Court of Common Pleas, following his jury convictions, in three dockets, of involuntary deviate sexual intercourse (IDSI), aggravated indecent assault,[1] and related offenses. The underlying offenses were committed in Westmoreland and Allegheny Counties but jointly tried. On appeal, Appellant avers the trial court erred in denying his motions challenging: (1) venue in Westmoreland County for the Allegheny County incidents; and (2) joinder of the dockets for trial. We agree that venue for the Allegheny County crimes is improper in Westmoreland County, and thus vacate those judgments of sentence without prejudice for the Commonwealth to refile the charges in the proper venue. With respect to the Westmoreland County offenses, we affirm the convictions but vacate the judgment of sentence and remand for sentencing on those counts.

## I. Facts

Appellant, who was a Mount Pleasant Borough police officer in Westmoreland County, was charged at six dockets with sexual and related crimes, committed against five victims in four counties over a 20-month

---

[1] 18 Pa.C.S. §§ 3123(a)(1), 3125(a)(1).

- 2 -

period.[2]  All of the charges were filed in Westmoreland County and joined for trial, over Appellant's objections.  We first summarize the allegations at each docket.

At Docket CP-65-CR-0001657-2016 (Docket 1657), the Commonwealth alleged the following.  On December 3, 2015, the victim, A.C., along with others, was at Appellant's home in Donegal Township, Westmoreland County, and he invited her "upstairs to watch television."  Trial Ct. Op., 9/2/21, at 6; Trial Ct. Op., 9/26/17, at 3.  However, there was no television in his room, and instead the two laid on the bed, "cuddled and talked."  *Id.*  Appellant then

> grabbed [A.C.] by the face and kissed her aggressively.  [A.C.] told [Appellant] that she did not want to have sex.  [Appellant] rolled on top of [A.C.] and pulled her shirt up, stating that he was going to have sex with her.  [Appellant] attempted to make [A.C.] touch his penis and . . . attempted to remove [her] pants. [Appellant choked A.C.] and struck her in the face several times. While doing so, [Appellant] asked [A.C.] if she "liked it rough" and stated [she] was going to do what [he] says.

Trial Ct. Op., 9/26/17, at 3.[3]

---

[2] As we discuss *infra*, on the morning of trial the Commonwealth *nolle prossed* the charges at two dockets, and subsequently the jury found Appellant not guilty at a third docket.

Furthermore, we note the Honorable Christopher Feliciani heard the venue issue and filed a pre-trial opinion on September 26, 2017.  However, the Honorable Meagan Bilik-DeFazio presided over the joinder issue, jury trial, and sentencing, and issued a post-sentence opinion on September 2, 2021.

[3] We note with displeasure the protracted, irrelevant, 14-page long description of A.C.'s conduct in Appellant's brief; this includes eight pages of quoting the alleged sexually explicit text messages between Appellant and A.C.  ***See***

Pennsylvania State Trooper James McKenzie investigated this incident, and on January 29, 2016, charged Appellant with attempted rape,[4] attempted IDSI, attempted sexual assault,[5] simple assault, aggravated assault, and indecent assault.[6] Appellant was taken into custody that same day. Within days of news reports of Appellant's arrest, several women contacted Trooper McKenzie, reporting similar allegations. Trooper McKenzie investigated these claims, which resulted in the following additional charges.

At Docket CP-65-CR-0004957-2017 (Docket 4957), the victim, A.P., alleged that on March 8, 2014, she and Appellant attended a concert in Kilbuck Township, Allegheny County, and then went to a bar.

> [Appellant] asked [A.P.] to sit in his truck and chat some more. [I]nside [his] vehicle, [Appellant] "grabbed [A.P.'s] face forcefully and tried to kiss her." [Appellant] then tried to put [A.P.'s] hand on his penis several times. [A.P.] told [Appellant] to stop repeatedly and attempted to get out of the truck several times; however, the door was locked. [Appellant] stated, "Do you like it rough" and he asked if she was a "dirty little whore." [Appellant] then grabbed [A.P.] by the head/hair and forced his penis [in] her mouth.

---

Appellant's Brief at 12-24. While the undertone of this discussion is the justification of Appellant's aggravated and indecent assault, he does not challenge the weight of the evidence on appeal, nor does he explain why A.C.'s conduct is material to the issues of venue and joinder. *See e.g., id.* at 22. Meanwhile, Appellant makes no mention of any of the factual allegations pertaining to the other four victims.

[4] 18 Pa.C.S. §§ 901(a), 3121.

[5] 18 Pa.C.S. § 3124.1.

[6] 18 Pa.C.S. §§ 2701(a)(1), 2702(a)(1), 3126(a)(2).

Trial Ct. Op., 9/26/17, at 4-5. A.P. did not report this incident to police until February of 2016, after hearing that Appellant was accused of another assault. Trial Ct. Op., 9/2/21, at 4. At this docket, Appellant was charged with IDSI and indecent assault.

At Docket CP-65-CR-0004956-2017 (Docket 4956), the victim, E.L., alleged that on September 20, 2014, she met Appellant at a festival fundraiser for police officers

> in North Park, Allegheny County. After talking for a while, [Appellant] suggested [they] go to his truck, which was parked along the road. Once [inside, Appellant] kissed [E.L.] and lifted her shirt to fondle her breasts. When [Appellant] attempted to remove [E.L.'s] bra, she pushed him away and told him to stop. [Appellant] grabbed her by the hair, called her "a dirty whore" and . . . asked, "Who's your master?" [Appellant] then touched [E.L.'s] vagina and told her to touch his penis, which she did. [Appellant] told [E.L.] to perform oral sex on him. [E.L.] complied because she was afraid of what would happen if she didn't. While [she performed] oral sex[, Appellant] stated, "Who's your master you dirty whore," while pulling her hair and slapping her buttocks. . . .

Trial Ct. Op., 9/26/17, at 5. *See also* Trial Ct. Op., 9/2/21, at 4. E.L. did not initially "report the incident because [Appellant] was a police officer and she was afraid nobody would believe her. [E.L.] reported the event [after seeing] the news that another person . . . accused him of a similar assault and she felt like she had to come forward." Trial Ct. Op., 9/2/21, at 5. Appellant was charged at Docket 4956 with IDSI, aggravated indecent assault, and indecent assault.

The charges at Dockets CP-65-CR-0004955 (Docket 4955) and CP-65-CR-0004958-2017 (Docket 4958) relate to the same victim, D.G., who worked at State Security and Investigation Services (SSIS), where Appellant was a training instructor. Although these charges were subsequently *nolle prossed*, they informed the trial court's decisions on venue and joinder, and thus we review them as well. At Docket 4955, D.G. alleged the following:

> In late February or early March 2015, [Appellant] offered to assist her with firearms training. They met at a range and after the training[, Appellant] suggested . . . they go to a restaurant . . . in in Fallston Borough, Beaver County. After eating . . . and walking back to their vehicles, [Appellant] said, "You can't leave, you need to pay up, get in my truck." [D.G.] complied[. Appellant] told her to perform oral sex on him. [D.G.] refused, and [Appellant] stated, "I'm the dominant, you're my sub. I'm your master, you'll do what I say." When [D.G.] stated that she was uncomfortable, [Appellant] stated, "You don't have a choice" and . . . grabbed [D.G.] by the hair and forced her head onto his penis. [Appellant] slapped her in the face and called her a "dirty little whore and a slut."

Trial Ct. Op., 9/26/17, at 5-6.

With respect to Docket 4958, D.G. alleged that several weeks after the above incident,

> on April 20, 2015, [Appellant] travelled to Pittsburgh where he briefly worked in an office with her. [Appellant] stated, "I'm your master, you need to blow me." [D.G.] initially refused; however, she stated [Appellant] forced her into an office and reminded her of his threat to get her fired if she did not comply with his demands. [D.G.] performed oral sex on [Appellant]. . . .

Trial Ct. Op., 9/26/17, at 6. Trooper McKenzie filed identical charges at both dockets: IDSI and indecent assault.

- 6 -

Finally, the charges at Docket CP-65-CR-0004954-2017 (Docket 4954), involved the victim, S.P., who likewise met Appellant through SSIS training and alleged the following:

> She . . . was to meet [Appellant] and [D.G.] at a restaurant in the city of Erie in Erie County on October 19, 2015. [Appellant] arrived at the restaurant, but [D.G.] did not show up[.] While the two talked at the bar, [Appellant] "put his hand on [her] leg and slid [his] hand into her vaginal area." [S.P.] pushed [Appellant's] hand away; however, moments later, he "slid his hand into [her] vaginal area and put his other hand at the back of her head and pulled her towards him, attempting to kiss [her]."
>
> As a result of this investigation, Trooper McKenzie charged [Appellant] with Indecent Assault[.]

Trial Ct. Op., 9/26/17, at 6-7 (paragraph break added).

## II. Pre-trial Venue & Joinder Motions

The Commonwealth filed the five subsequent dockets in Westmoreland County, where Docket 1657 (A.C.) had already been filed, and gave notice of intent to consolidate the charges for trial. Sometime in 2017, Appellant filed a petition challenging venue under Pa.R.Crim.P. 130 (venue).[7] The trial court

---

[7] Appellant's filing was titled a "Petition to **Dismiss** Under PA Rules of Criminal Procedure 130." However, "no provision in our criminal procedural rules permits **dismissal** as a remedy for improper venue. To the contrary, our rules repeatedly [reference] **transferring** cases to another judicial district when improper venue is determined." *Commonwealth v. Callen*, 198 A.3d 1149, 1153 n.1 (Pa. Super. 2018) (citation omitted & emphases added). At the venue hearing, Appellant conceded the proper relief would be filing the charges in the counties where the conduct occurred. N.T., 6/29/17, at 6.

Furthermore, we note we are unable to determine the date Appellant filed this petition. The petition is not included in the certified record, and none

- 7 -

conducted a hearing on June 19, 2017. The Commonwealth stated the District Attorneys of the other counties agreed to the filing of the charges in Westmoreland County. N.T., 6/29/17, at 8. The Commonwealth claimed venue in Westmoreland County was appropriate because Appellant was a "serial sex offender" and all the offenses comprised a single criminal episode. *Id.* at 3, 8.

Appellant denied there was a single criminal episode, and argued the offenses involved different victims, occurred in different counties, and did not have any logical or temporal relationship. Instead, he argued, consistent with *Commonwealth v. Spotz*, 756 A.3d 1139 (Pa. 2000) (discussed *infra*), the sole connection between the offenses was himself as the actor. *See* N.T., 6/29/17, at 4-5. The trial court directed the parties to file briefs. On September 26, 2017, the court denied Appellant's motion, thus permitting all charges to be prosecuted in Westmoreland County.

Eight months thereafter, on June 11, 2018, Appellant filed a motion at Docket 1657 (the incident in Westmoreland County) opposing joinder, arguing evidence of the other crimes would not be admissible at trial, the jury would not be able to separate the issues, and he would suffer undue prejudice. The

---

of the trial dockets include a docket entry for it. While Appellant's reproduced record includes a copy of the petition, the copy does not show a dated "filed" stamp, nor any date in the body of the petition or with the signature line.

trial court heard argument on June 26th and directed the parties to file briefs. On August 22, 2018, the court denied Appellant's motion opposing joinder.

Appellant filed a motion for reconsideration, which was denied on February 11, 2019. Upon Appellant's application, the trial court amended its order to state both the venue and joinder issues "involve[d] a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal . . . may materially advance the ultimate termination of the matter[.]" Order, 3/7/19, *citing* 42 Pa.C.S. § 702(b) (interlocutory appeals by permission).[8]

Appellant accordingly filed with this Court a petition for permission to appeal, which was denied on August 29, 2019. **Commonwealth v. Brown**, 69 WDM 2019 (order) (Pa. Super. July 10, 2019), *review denied* 89 WM 2019 (order) (Pa. 2019). Appellant filed a motion for reconsideration, which was likewise denied, and then a petition for review with the Pennsylvania Supreme Court, which was denied on December 31, 2019.

---

[8] **See** 42 Pa.C.S. § 702(b) ("The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order."); **Commonwealth v. Yingling**, 911 A.2d 572, 575 (Pa. Super. 2006) ("When an interlocutory order is not immediately appealable by right, discretionary review may only be sought by the filing of a petition for an interlocutory appeal by permission pursuant to Pa.R.A.P. 1311 and 42 Pa.C.S.A. § 702(b).").

### III. Trial & Sentencing

The consolidated charges proceeded to a jury trial on October 5, 2020. Before trial formally commenced, the Commonwealth withdrew the charges at Dockets 4955 and 4958, explaining the victim, D.G., was no longer communicating with the prosecutors. N.T. Jury Trial Vol. I, 10/5/20, at 2. Trial thus proceeded at Dockets 1657, 4954, 4956, and 4957. The victims, A.C., E.L., S.P. and A.P., respectively, testified as summarized above. Appellant did not testify or present evidence. N.T. Trial Vol. V, 10/9/20, at 708.

At Docket 1657 (A.C., Westmoreland County), the jury found Appellant guilty of two counts of indecent assault and one count of simple assault.[9] At Docket 4956 (E.L., Allegheny County), the jury found Appellant guilty of all counts: IDSI, indecent assault, and two counts of aggravated indecent assault. At Docket 4957 (A.P., Allegheny County), the jury found Appellant guilty of both counts: IDSI and indecent assault. Finally, at Docket 4954 (S.P., Allegheny County), the jury found Appellant not guilty of the sole charge, indecent assault.

---

[9] With respect to A.C., the jury found Appellant not guilty of the three counts of attempt — to commit rape, IDSI, and sexual assault.

On May 10, 2021, the trial court imposed an aggregate sentence of five to 10 years' imprisonment, to be followed by five years' probation.[10] Appellant filed a timely post-sentence motion, again seeking reconsideration of the trial court's decision as to venue and joinder. The trial court denied relief on September 2, 2021. Appellant timely filed separate notices of appeal at each docket.[11] This Court *sua sponte* consolidated the appeals.

## IV.  Statement of Questions Involved

Appellant raises two issues for this Court's review:

I. Whether the trial court erred in denying [Appellant's] challenge to venue for cases occur[r]ing outside of Westmoreland County where the Commonwealth did not prove that those cases took

_____

[10] At Docket 4956 (E.L.), the trial court imposed the following sentences of imprisonment, all to run concurrently: (1) IDSI — five to 10 years; (2) aggravated indecent assault — three to 10 years; (3) aggravated indecent assault — three to 10 years; and (4) indecent assault — nine months to five years.

At Docket 4957 (A.P.), the trial court imposed a sentence of five to 10 years' imprisonment for IDSI, to run concurrently with the sentences at Docket 4956, above. The other conviction, indecent assault, merged for sentencing purposes.

At Docket 1657 (A.C.), the trial court imposed the following sentences of **probation**, all to run concurrently with each other, but consecutive to the sentences at Docket 4956: (1) indecent assault — five years; (2) indecent assault — five years; and (3) simple assault — two years.

Finally, we note Appellant was directed to register as a Tier III offender under the Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.51 to 9799.75.  N.T., 5/10/21, at 49.

[11] The trial court did not direct Appellant to file Pa.R.A.P. 1925(b) statements of errors complained of on appeal.

place in Westmoreland County, arose from the same criminal episode as any crimes purportedly occurring in Westmoreland County, and — instead — engaged in improper forum shopping prejudicial to [Appellant].

II. Whether the trial court erred in denying [Appellant's] request for severance and opposition to the Commonwealth's joinder of all cases brought against him where those cases were not based on the same act/transaction, the evidence of the multiple cases involved would not be admissible in separate trials of each case, and [Appellant] suffered prejudice as a result of the cases' joinder.

Appellant's Brief at 6.

## V. Standards of Review & Relevant Authority

"Appellate review of venue challenges, similar to that applicable to other pre-trial motions, [ ] turn[s] on whether the trial court's factual findings are supported by the record and its conclusions of law are free of legal error." **Callen**, 198 A.3d at 1158-59 (citation omitted).

This Court has addressed venue as follows:

> . . . Venue challenges concerning the locality of a crime . . . stem from the Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution, both of which require that a criminal defendant stand trial in the county in which the crime was committed . . . .
>
> [This] constitutional requirement . . . protect[s] the defendant from prosecutorial forum shopping (as to both judges and juries) and provid[es] the defendant with the convenience of having relevant evidence and witnesses more readily accessible (for, it is more likely that relevant evidence and witnesses will be located in the place where the crime occurred).
>
> \* \* \*
>
> [T]he Commonwealth selects the county of trial[. W]here the defendant properly challenges the Commonwealth's chosen

- 12 -

venue, the Commonwealth is tasked with the burden of proving, by a preponderance of the evidence, that venue is proper.

***Callen***, 198 A.3d at 1157-58 (citations omitted).

Pennsylvania Rule of Criminal Procedure 130 sets forth the general rule that all criminal proceedings shall be brought in the "magisterial district in which the offense is alleged to have occurred." Pa.R.Crim.P. 130(A). The rule, however, provides an exception: "When charges arising from **the same criminal episode** occur in more than one judicial district, the criminal proceeding on all the charges may be brought" in one of those judicial districts. Pa.R.Crim.P. 130(A)(3) (emphasis added).

With respect to a finding of a "single criminal episode," this Court has explained:

> ["A] condition precedent to the exercise by a single county to jurisdiction in a case involving multiple offenses in various counties is: the offense must constitute a single criminal episode." If "a number of charges are logically or temporally related and share common issues of law and fact, a single criminal episode exists." When we ascertain
>
> > whether a number of statutory offenses are 'logically related' to one another, the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses. The mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require 'an absolute identity of factual backgrounds.'
> >
> > The temporal relationship between criminal acts will be a factor which frequently determines whether the acts are 'logically related.' However, the definition of a 'single criminal episode' should not be limited to acts which are

- 13 -

immediately connected in time. 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.

*Commonwealth v. Witmayer*, 144 A.3d 939, 946-47 (Pa. Super. 2016) (citations omitted).

Furthermore, we consider the standard of review for a permissive joinder issue:

[A] motion for severance [of charges] is addressed to the sound discretion of the trial court, and . . . its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether [the] appellant was prejudiced by the trial court's decision not to sever. [The a]ppellant bears the burden of establishing such prejudice.

*Commonwealth v. Dozzo*, 991 A.2d 898, 901 (Pa. Super. 2010) (citation omitted).

Pennsylvania Rule of Criminal Procedure 582(A) provides:

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1)(a)-(b). We have stated:

Where the defendant moves to sever offenses not based on the same act or transaction . . . the court must . . . determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of

- 14 -

confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Dozzo*, 991 A.2d at 902 (citation omitted).

This Court has compared venue and joinder:

[O]ur venue rules are far more narrow than our permissive joinder rules. Thus, where [Rule] 582 permits offenses in separate informations to be tried together if "the evidence of each of the offenses would be admissible in a separate trial for the other," our venue rules borrow the language of our compulsory joinder statute — and only allow an offense to be tried in a foreign judicial district if it is part of a "single criminal episode" as an offense that occurred within the district. *See* Pa.R.Crim.P. 582(A)(1)(a) and 130(A)(3); *see also* 18 Pa.C.S.[ ] § 110(1)(ii). Hence, in cases where our venue and permissive joinder rules are in irreconcilable conflict, the more specific venue rules control over the more general permissive joinder rule.

*Callen*, 198 A.3d at 1159 n.7 (some citations omitted). We now turn to Appellant's arguments on appeal.

## VI. Venue

In his first issue, Appellant contends the trial court erred in denying his challenge to venue in Westmoreland County for the non-Westmoreland County incidents. Specifically, he claims the court erred in finding all the charges arose from a single criminal episode. In support, he argues the following. In considering venue, a court must consider whether there was a single criminal episode. Here, however, the trial court mistakenly applied the rules for joinder instead — whether evidence of one crime would be relevant and admissible in the prosecution of the other crimes. Appellant's Brief at 49. In this matter, there was no single criminal episode because: (1) the complaints at each

- 15 -

docket "reveal[ ] nothing" about the other victims; (2) each case "occurred in isolation, had nothing to do with the others, and did not depend on the others;" and (3) the crimes were not temporally related, as they were committed over a two year-span. *Id.* at 33, 34, 36, 37, 38, 41, 50. "The only link" between the cases is that the subsequent victims came forward after learning Appellant had been charged with respect to A.C. *Id.* at 33. We agree that Appellant is entitled to relief.

First, we consider Appellant's reliance on *Spotz*, which he summarizes to have held "a single criminal episode was **not** found even though the crimes were mere days apart and two of the subsequent killings resulted from Mr. Spotz's need to flee[.]" *See* Appellant's Brief at 44. We conclude *Spotz* is distinguishable.

In *Spotz*, the defendant shot and killed his brother in Clearfield County. *Spotz*, 756 A.2d at 1158. Over the next two days, he killed two more victims, in Clearfield and Schuylkill Counties, respectively, when he stole their vehicles to facilitate escape. *Id.* Unlike the charges in this case, Spotz's charges relating to each victim were brought separately in each county. *See id.* at 1154. He was first tried in Clearfield and Schuylkill Counties and found guilty. *See id.* Spotz then sought to quash the York County charges pursuant to the compulsory joinder provision of 18 Pa.C.S. § 110 (barring a prosecution when: (1) a former prosecution resulted in a conviction; and (2) the subsequent

prosecution is for any offense arising from the same criminal episode). *Spotz*, 756 A.2d at 1157. The trial court denied this motion to quash. *See id.*

On appeal, the Pennsylvania Supreme Court affirmed, rejecting Spotz's contention the three killings arose from a single criminal episode. *Spotz*, 756 A.2d at 1158-59. The Court reasoned: "What connects the three killings is not the sort of temporal or logical relationship that requires joinder under § 110. Rather, the common denominator is [Spotz]. But the proof as to each of the killings was largely independent." *Id.* at 1158.

Although *Spotz* discussed the legal precept of a "single criminal episode," the decision did not make any mention of venue, the issue Appellant now raises. Instead, *Spotz* concerned compulsory joinder under Section 110, which is not at issue in this case.[12] *See Spotz*, 756 A.2d at 1158. Appellant fails to address the distinct procedural posture presented in *Spotz*, and in the absence of any argument why *Spotz's* Section 110-compulsory joinder discussion should apply to a venue question, we decline to extend *Spotz* to this case.

On the other hand, this Court's decision in *Callen*, 198 A.3d 1149, cited by Appellant in his brief, provides guidance. *See* Appellant's Brief at 9, 28, 30-31, 45, 49-51. In *Callen*, the defendant was charged at two dockets in

---

[12] Although Appellant separately brings a **permissive** joinder issue in this matter, that is distinct from a **compulsory** joinder claim.

Allegheny County.  *Callen*, 198 A.3d at 1152.  First, the Commonwealth alleged the following occurred in Allegheny County: (1) in 2010, the defendant, a gymnastics coach, began to groom one of his students, the 12-year old victim; (2) in 2013, the defendant touched the victim's vagina multiple times while stretching and training her; and (3) in 2014, when the victim was 16 years old, he began having sexual intercourse with her over a 20-month period, in his car in parking lots.  *Callen*, 198 A.3d at 1154-55, 1161.

At the other docket, the Commonwealth alleged that from 1998 to 2002, the defendant committed numerous sexual offenses in Butler County against the two minor step-children of his best friend.  *Callen*, 198 A.3d at 1155.  The children were, respectively, aged four through eight, and five through nine, over the course of the abuse, which was committed "with the blessing of [their] stepfather."[13]  *Id.* at 1155, 1165.  The defendant challenged venue in Allegheny County for this docket, as the offenses were committed in Butler County, but the trial court denied relief.  *Id.* at 1153-54.

On appeal, this Court reversed, concluding the various offenses did not constitute a single criminal episode.  *Callen*, 198 A.3d at 1166.  First, the Court reasoned any temporal relationship was "attenuated," where the

---

[13] These two minor victims "report[ed] the abuse after they saw news stories that [the defendant was] arrested for sexually abusing" his gymnastics student.  *See Callen*, 198 A.2d at 1155.

defendant abused the minor siblings from 1998 through 2002, but did not begin to groom the gymnastics student until 2010. *Id.* at 1161. Additionally, the crimes against the siblings would not have been admissible to prove a common scheme, plan, or design in a separate trial for the crimes relating to the student. *Id.* at 1164. This Court reasoned: (1) the ages of the victims were different — four and five, in contrast with 12; (2) the defendant's access to the victims differed — he "sexually abused [the siblings] with the blessing of [their] stepfather[,] whereas [he] had to conceal his abuse of [his gymnastics student] from her mother[;]" (3) the locale of the abuse differed — the defendant abused the siblings at their house or his house, but abused the student at gymnastics class and later, in his vehicle; and (4) "[t]he manner in which [the defendant] sexually abused [the siblings] was extremely unlike the manner in which [he] sexually abused" his student. *Id.* at 1164-65. This Court summarized the defendant, *inter alia*: (1) directed the young siblings to change into skirts, without underwear, and told them to do cartwheels "and bend over and spread [their] legs[,]" while he took photographs; (2) took one of the siblings to the basement, told her to remove her "underwear, and touched her vagina with his hands and mouth[;]" and (3) on another occasion, "simulate[d] sexual intercourse" with one of the siblings. *Id.* at 1165. With respect to his student victim, however, the defendant gave her gifts,

> communicated with [her] through text messages and social media, coached [her] in gymnastics, took [her] on trips to see

- 19 -

gymnastics meets, told [her] "I love you;" and, acted in a way that made [her] believe she was "in love with him like [she] . . . would be in love with a boyfriend.

*Id.* at 1166 (record citations omitted).

In the dockets *sub judice*, we observe the factors relevant to the venue issue are not disputed. The trial court acknowledged the charges at each docket related to different victims and were committed in different counties over a 20-month span. Nevertheless, whereas Appellant argues these facts do not comprise a single criminal episode, the court found, under the totality of the circumstances, they did, where "all of the incidents are, both, logically and temporally related." Trial Ct. Op., 9/26/17, at 7-8. The court reasoned:

> First, . . . the offenses share a substantial duplication of issues of law and fact. [A]ll of the victims reported strikingly similar accounts of physical and abusive conduct by [Appellant] during the alleged sexual assaults. The victims alleged that during their encounter with [Appellant], he forcibly grabbed them by their faces and hair and struck and slapped them. Some victims also alleged that [Appellant] asked them if they "liked it rough" during the assault. Additionally, the victims alleged that [Appellant] used derogatory language towards them by referring to them as "dirty whores" and referring to himself as their "master[."] As [Appellant's] alleged behavior shows a potential common scheme or course of conduct, each victim's testimony would be relevant in each trial.
>
> Furthermore, Trooper McKenzie would be called as a witness in each trial as he solely investigated the cases, interviewed all of the victims, and charged [Appellant] with the same or similar offenses under the Pennsylvania Crimes Code.
>
> Second, the Court finds that the charges arising from the incidents are temporally related. The sexual assaults are alleged to have occurred in a continuous time sequence occurring every several months over a two-year period. . . .

Trial Ct. Op., 9/26/17, at 8 (paragraph break added).

First, we disagree with the trial court's reasoning in finding the separate incidents arose from a single criminal episode. While it is true Appellant exhibited similar behavior with each victim and was charged with similar, and in some instances identical, offenses at each docket, these factors alone do not present a "duplication of issues of law and fact." *See* Trial Ct. Op., 9/26/17, at 8. Instead, the questions of fact, and the sufficiency and weight of the evidence, with respect to each victim are distinct and isolated from the issues of fact relating to the other victims. Similarly, the charges at each docket do not present a duplication of legal issues.

*Callen* is instructive. In that case, the Court determined the defendant's offenses "lack[ed] a temporal and (more importantly) a logical relationship[:]"

> [The defendant's] abuse of [the minor siblings] and his access to [them] did not lead to his abuse of, or access to, [the gymnastics student.] Rather, [the defendant's] abuse of [the siblings] arose out of his relationship with the girls' then-stepfather . . . , and lasted until [the step-father] was arrested for his abuse, whereas [the defendant's] abuse of [his student] began independently and was facilitated by [his] role as . . . gymnastics coach.
>
> In addition, at the time of the abuse, neither [of the siblings] knew [the gymnastics student] and [the student] did not know either [sibling]. Simply stated, there was no identity of factual background and no series of transactions with either an immediate or remote connection; [the defendant's] crimes against [the siblings] were completely separate and distinct from his crimes against [the gymnastics student].

*Callen*, 198 A.3d at 1161 (paragraph break added).

- 21 -

We conclude this same reasoning may be applied to the underlying dockets. Appellant did not meet or gain access to A.C., A.P., and E.L. through the other victims, nor *via* the same means. None of the victims knew each other.[14] There was no common factual background for each docket, nor any transactions or facts connecting each incident — aside from Appellant himself as the actor. To this end, we further disagree that the incidents were temporally related. Instead, Appellant committed the offenses generally several months apart, over a 21-month period.

Furthermore, we disagree with the trial court's reliance, in determining **venue**, that Appellant's conduct presented a common scheme or course of conduct, and that the testimony of each victim and Trooper McKenzie would be relevant and admissible at separate trials. Although these factors are relevant to the issue of **joinder**, they do not inform the **venue** question of whether Appellant's conduct or charges arose from a single criminal episode. *See Callen*, 198 A.3d at n.7 ("[O]ur venue rules are far more narrow than our permissive joinder rules. Thus, where [Rule] 582 permits offenses in separate informations to be tried together if 'the evidence of each of the offenses would be admissible in a separate trial for the other,' our venue

---

[14] We note the victims D.G. and S.P. both worked for SSIS, where Appellant was a training instructor. Nevertheless, we reiterate that the charges relating to D.G. were *nolle prossed* and the jury found Appellant not guilty of the charges relating to S.P.

rules . . . only allow an offense to be tried in a foreign judicial district if it is part of a "single criminal episode[.]").

For the foregoing reasons, we conclude the trial court erred in denying Appellant's motion challenging venue. **See Callen**, 198 A.3d at 1158-59. We thus reverse the court's decision allowing the charges at Dockets 4956 (E.L., Allegheny County) and 4957 (A.P., Allegheny County) to be filed in Westmoreland County. We vacate the convictions and judgments of sentence at those two dockets, and remand without prejudice for the Commonwealth to refile the charges in the appropriate venue.[15]

In light of our disposition on Appellant's venue issue, we need not reach his arguments concerning joinder.

Finally, with respect to Docket 1657 (A.C.), which was appropriately field in Westmoreland County where the offenses were committed, we affirm the convictions. Evidence relating to the other dockets, including the testimony of the other victims, was admitted at the trial for Docket 1657. At the June 29, 2017, hearing on venue, the Commonwealth argued that even if the other charges were not filed in Westmoreland County, this evidence would

---

[15] The question, of whether the charges at Dockets 4956 and 4957 can or should be joined for trial in Allegheny County, would appropriately be directed to the new trial court presiding over those matters. We offer no opinion on that issue.

be admissible under Pa.R.E. 404(b) to show similar conduct and the absence of mistake. N.T., 6/29/17, at 11-12; *see also* Pa.R.E. 404(b).

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." ***Commonwealth v. Tyson***, 119 A.3d 353, 357 (Pa. Super. 2015) (citation omitted). Pennsylvania Rule of Evidence 404(b) provides that generally, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). "Evidence of a prior crime may also be admitted to show a defendant's actions were not the result of a mistake or accident, 'where the manner and circumstances of two crimes are remarkably similar.'" ***Tyson***, 119 A.3d at 359.

Here, the trial court found evidence relating to each victim would be relevant and admissible, at a separate trial on Docket 1657, to show a common scheme or course of conduct. Although the court articulated this reasoning in its discussion of venue, the underlying rationale applies squarely to the admission of evidence under Rule 404(b). ***See Tyson***, 119 A.3d at

357. Accordingly, although Dockets 4956 and 4957 were inappropriately joined with Docket 1957 for trial, evidence relating to the former dockets was nevertheless properly admitted at the trial for Docket 1657.

Thus, we do not disturb the convictions at Docket 1657. Nevertheless, we vacate the corresponding judgments of sentence and remand for resentencing. *See Commonwealth v. Carr*, 262 A.3d 561, 573 (Pa. Super. 2021) ("[I]f our disposition apparently alters the sentencing scheme of the trial court, we must vacate the sentence and remand for resentencing.").

## VII.  Conclusion

For the foregoing reasons, we vacate the convictions and judgments of sentence at Dockets 4956 and 4957, without prejudice for the Commonwealth to refile these charges in the appropriate venue. At Docket 1657, we affirm the convictions but vacate the judgments of sentence and remand for resentencing.

Judgments of sentence vacated in part and affirmed in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  12/08/2022